STATE of Wisconsin, Plaintiff-Respondent,

v.

Quentrell E. WILLIAMS, Defendant-Appellant.

Court of Appeals

*No. 2005AP2282–CR. Submitted on briefs May 12, 2006. —Decided September 28, 2006.*

2006 WI App 212

(Also reported in 723 N.W.2d 719.)

838

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Eileen A. Hirsch*, assistant state public defender of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Michael C. Sanders*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Lundsten, P.J., Dykman and Deininger, JJ.

¶ 1. DYKMAN, J. Quentrell Williams appeals from a judgment entered on a jury verdict convicting him of recklessly causing harm to a child, contrary to WIS. STAT. § 948.03(3)(b) (2003–04).[1] He also appeals from an order denying his postconviction motion for a new trial. Williams contends he received ineffective assistance of counsel. Alternatively, he requests a discretionary reversal under WIS. STAT. § 752.35 because the real controversy was not fully tried. He bases both

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

arguments on three alleged errors at trial: (1) defense counsel's failure to anticipate recklessly causing harm to a child as a lesser-included offense; (2) defense counsel's misunderstanding the court's ruling on Williams's motion in limine, and consequent failure to introduce testimony evidence of his being similarly disciplined as a child; and (3) the prosecutor's mischaracterizing trial testimony in his closing argument and defense counsel's failure to object. We conclude that any deficient performance by Williams's attorney did not prejudice his defense, and he was therefore not denied effective assistance of counsel. We also conclude that the real controversy was fully tried. We therefore affirm.

## BACKGROUND

¶ 2. The following is taken from trial testimony and the circuit court's judgment and order. On the evening of February 10, 2004, Williams's five-year-old daughter, A.B.A., was staying with him at the home he shared with his grandmother and his cousin. Williams had not been in A.B.A.'s life before that time. Around 9:30 to 10:00 p.m., Williams began attempting to put A.B.A. to sleep for the night. A.B.A. was supposed to go to sleep in Williams's grandmother's room, but instead was misbehaving and jumping on the grandmother's bed. At 11:00 p.m., Williams's grandmother told Williams he needed to do something with A.B.A. because she would not sleep. Williams then spoke with A.B.A. and insisted she go to sleep or he would spank her.

¶ 3. Williams sent A.B.A. back into his grandmother's room and returned to his own room. At 1:00 a.m., he came out of his room and saw A.B.A. sitting up watching television. After another discussion over A.B.A. needing to go to bed and her further refusal,

Williams took A.B.A. into his room and told her he was going to spank her because she was being disobedient. He instructed her to lie flat on his bed with her face to the mattress, fully clothed. He went to his closet and selected the only belt he had without metal studs, which was a weightlifting belt, and struck A.B.A. five times on the buttocks. Williams testified that he decided to spank his daughter with a belt because that was how he was disciplined as a child, and he selected the weightlifting belt because he believed it would cause less harm to A.B.A. than the belts with metal pieces.

¶ 4. Three days later, A.B.A. was returned to her mother. A.B.A.'s mother noticed bruising on A.B.A.'s buttocks and took A.B.A. to the emergency room. The emergency room doctor who treated A.B.A., Dr. Joel Wacker, testified at trial that A.B.A. had two large areas of bruising on her buttocks, which were approximately two or three days old when he examined her. When Dr. Wacker asked A.B.A. how the injuries occurred, she said she had been spanked by her father. Dr. Wacker testified that the injuries would have absolutely caused A.B.A. pain. On a scale of one to ten, with one being the least and ten being the most pain, Dr. Wacker estimated the pain A.B.A. experienced was a five or a six. Dr. Wacker testified he would have called the police if they had not already been present in the exam room because of the suspicion of child abuse.

¶ 5. Officer Weyh, one of the officers assigned to investigate the cause of A.B.A.'s injuries, also testified at trial. Weyh testified that he questioned Williams about the injuries to A.B.A. and Williams admitted striking A.B.A. with the weightlifting belt. Williams told Officer Weyh he did not intend to harm his daughter, but only wanted to discipline her and was trying to be a father figure to the best of his ability.

¶ 6. The State charged Williams with intentionally causing harm to a child contrary to Wis. Stat. § 948.03(2)(b). Williams filed a motion in limine requesting the court to allow testimony from Williams and other witnesses regarding Williams's upbringing and how he was disciplined as a child. Williams's attorney argued at the hearing on the motion in limine that the testimony evidence was relevant to Williams's state of mind when he acted and whether he intended to harm A.B.A. The court found there was insufficient information before it to decide the motion, but stated:

> [B]ased on what I'm hearing, if an objection were raised at trial, I would grant the objection on the basis of relevance . . . . I think under the circumstances I'm going to, on my own motion, I'm going to order that absent a showing prior, absent a showing to the Court prior to any questioning of any witness, that there be no argument nor any questions asked to elicit information about how the defendant was disciplined as a child . . . . I'm not precluding you from offering it, but I'm requiring that you show me specifically the relevance of what it is that you want to offer before you put that before a jury even in the form of argument or a question.

Following the hearing, Williams's attorney never offered any proof of relevance to introduce the testimony evidence.

¶ 7. At trial, on cross-examination, A.B.A.'s mother testified as follows:

> Q: Ms. [A], you are the one who first noticed the bruising to [A.B.A.], correct?
>
> A: Yes.
>
> Q: And you were with her in the emergency room?

A: Yes.

Q: Before you got to the emergency room when you noticed the bruising, did you ask [A.B.A.] what the heck had happened?

A: Yes.

Q: What did she tell you?

A: She seemed almost scared to tell me at first, and then she told me that her dad had hit her with a belt.

Q: She said, mommy, it was the biggest, fattest, blackest, blackest, blackest belt there is and it really hurt?

A: She didn't say the really hurt part, but she did say that in the emergency room. She actually said it didn't hurt.

¶ 8. The prosecutor summarized A.B.A.'s mother's testimony in his closing argument as: "She told you A.B.A. was scared and A.B.A. told her that the defendant had hit her with that belt, and she called it the biggest, fattest, blackest, blackest, blackest belt there is, and she said it really, really hurt." Williams's attorney made no objection to the prosecutor's closing argument.

¶ 9. At the close of evidence, the prosecution requested submission of the lesser-included offense of recklessly causing harm to a child under Wis. Stat. § 948.03(3)(b). Williams's attorney objected, claiming submission of the lesser-included offense was "unfair surprise" and "[t]here is no way that I can effectively argue for my client at this point if it is included." The court decided submission of the lesser-included offense was appropriate, and the jury found Williams guilty of the lesser-included offense of recklessly causing harm to a child.

¶ 10. Williams filed a postconviction motion for a new trial because he was afforded ineffective assistance of counsel and in the interest of justice under WIS. STAT. § 805.15(1) because the real controversy was not fully tried. The trial court denied the motion. Williams appeals from the judgment of conviction and the order denying his postconviction motion for a new trial.

## STANDARD OF REVIEW

¶ 11. Once the underlying facts have been established, the determination of effective assistance of counsel is a question of law we decide de novo. *State v. Felton*, 110 Wis. 2d 485, 504–05, 329 N.W.2d 161 (1983). Thus, we review Williams's claim of ineffective assistance of counsel without deference to the trial court. *See id.*

¶ 12. It is within our discretion to grant a new trial if the real controversy has not been fully tried. WIS. STAT. § 752.35. We thus conduct an independent review of the record to determine if a new trial is warranted in the interest of justice. *See id.*

¶ 13. A trial court's ruling on a postconviction motion for a new trial in the interest of justice is within its discretion. *State v. Randall*, 197 Wis. 2d 29, 36, 539 N.W.2d 708 (Ct. App. 1995). Thus, we review the court's denial of Williams's motion for an erroneous exercise of discretion. *See id.* A trial court properly exercises its discretion if it applies accepted legal standards to the facts in the record. *Id.*

## DISCUSSION

¶ 14. The State contends a claim for a new trial in the interest of justice is inappropriate when the claim may be analyzed under ineffective assistance of counsel. Thus, the State argues, Williams's entire argument must be analyzed under the framework of ineffective assistance of counsel. We disagree.

¶ 15. The State relies on *State v. Flynn*, 190 Wis. 2d 31, 46–49, 527 N.W.2d 343 (Ct. App. 1994), in which we concluded the defendant's claim of ineffective assistance of counsel, based on his trial counsel's failure to adequately investigate his case, failed. We then rejected his argument that the real controversy was not fully tried based on the same inadequate investigation. *Id.* at 48–49 n.5. We said that Wis. Stat. § 752.35 " 'was not intended to vest this court with power of discretionary reversal to enable a defendant to present an alternative defense' that may have not been advanced by trial counsel at the first trial whose representation is alleged to be ineffective because of that failure." *Id.* (quoting *State v. Hubanks*, 173 Wis. 2d 1, 29, 496 N.W.2d 96 (Ct. App. 1992)). We relied on the established rule that a new trial because the real controversy was not fully tried is not appropriate "merely because the defense presented at the first trial proved ineffective." *Hubanks*, 173 Wis. 2d at 29. We therefore rejected Flynn's argument that the real controversy was not fully tried, which was based on an unsupported claim that a different defense could have been developed through an adequate investigation of the case. *Flynn*, 190 Wis. 2d at 48–49 n.5.

¶ 16. Subsequent to *Flynn*, however, the supreme court decided *State v. Hicks*, 202 Wis. 2d 150, 549 N.W.2d 435 (1996). The court granted a new trial

846

because the real controversy was not fully tried even though we had granted a new trial as a result of ineffective assistance of counsel. *Id.* at 152–53. The supreme court concluded that the real controversy was not fully tried when defense counsel failed to have pubic hair found at the sexual assault crime scene subjected to DNA analysis, even though we had concluded defense counsel was ineffective on the same facts. *Id.* Because (1) DNA evidence excluding the defendant was relevant to the critical issue of identification; (2) the jury did not hear that evidence; and (3) the State had relied on the hair evidence to assert the defendant's guilt, the court concluded on its own motion that the real controversy had not been fully tried. It therefore affirmed our decision but on different grounds. *Id.*

¶ 17. Thus, *Hicks* supports a conclusion that an argument that can be framed under ineffective assistance of counsel may also support a motion for a new trial because the real controversy was not fully tried. We therefore consider Williams's arguments that he was denied effective assistance of counsel and that the real controversy was not fully tried. We consider each argument in turn.

*1. Ineffective Assistance of Counsel*

¶ 18. A defendant claiming ineffective assistance of counsel must establish that a defense attorney's performance was deficient, and that the deficient performance prejudiced the defense. *State v. Allen*, 2004 WI 106, ¶ 26, 274 Wis. 2d 568, 682 N.W.2d 433 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Assessing deficient performance means determining

whether counsel's performance was objectively reasonable. *State v. Kimbrough*, 2001 WI App 138, ¶¶ 31–35, 246 Wis. 2d 648, 630 N.W.2d 752. In making this determination we may consider reasons trial counsel overlooked or disavowed. *Id.*, ¶¶ 24, 31. An attorney's performance is deficient when "the attorney made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Allen*, 274 Wis. 2d 568, ¶ 26 (citation omitted). Deficient performance has prejudiced the defense when there is "a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (citations omitted). A claim for ineffective assistance of counsel fails if we conclude either that counsel's performance was not deficient or that the deficient performance did not prejudice the defense, and we may begin with either inquiry. *State v. Johnson*, 153 Wis. 2d 121, 128, 449 N.W.2d 845 (1990) (citing *Strickland*, 466 U.S. at 697).

¶ 19. We conclude there was no prejudice to Williams's defense caused by any of the errors he alleges. Therefore, we need not analyze whether counsel's performance was deficient. We will address the lack of prejudice in each error raised by Williams.

### a. Failure to Anticipate Recklessly Causing Harm to a Child as a Lesser-Included Offense

■

¶ 20. Williams argues that his attorney's failure to anticipate the lesser-included offense of recklessly causing harm to a child prejudiced his defense because counsel failed to argue the elements of recklessness or pursue the affirmative defense of reasonable parental

discipline. Williams relies on *Felton*, 110 Wis. 2d 485, in which the supreme court held that defense counsel was ineffective by focusing solely on self-defense as applied to a battered spouse, and thus failing to recognize heat-of-passion as a defense.

¶ 21. This case, however, is distinguishable from *Felton*. In *Felton*, the trial attorney never asked for an instruction on heat-of-passion manslaughter. *Id.* at 505. Thus, the defense was prejudiced "[b]ecause the facts would, had the law been known to counsel, have been sufficient to warrant an instruction on heat-of-passion manslaughter" to the jury. *Id.* at 508. Here, the jury *was* instructed on the affirmative defense of reasonable parental discipline, both for intentionally and recklessly causing harm to a child.[2] At trial, Williams argued that he was acting reasonably in disciplining his daughter, which negates recklessness.[3] Williams testified that

---

[2] The jury was instructed on the lesser-included offense of recklessly causing harm to a child, and then instructed:

> A person's conduct is not reckless if the person is acting lawfully in the disciplining of a child. The law allows a person responsible for a child's welfare to use reasonable force to discipline that child. Reasonable force, as I have told you, is that force which a reasonable person would believe is necessary.

[3] A comment to the jury instruction for reasonable parental discipline as a defense to recklessly causing harm to a child states:

> The Committee concluded that the description of the privilege should be integrated with the definition of recklessness. This is because recklessness requires that conduct create an unreasonable risk of harm. A risk of harm is not unreasonable if the conduct is undertaken as reasonable discipline. Recklessness and reasonable discipline cannot coexist, so it is best to advise the jury to consider the law relating to reasonable discipline when considering the recklessness element.

Wis JI—Criminal 951, Comment 1.

his intent was to discipline his daughter and that he chose the only belt he had without metal studs so that he would not seriously hurt A.B.A. when he spanked her. He explained the steps he took before the spanking to minimize injury: instructing A.B.A. to lie face down on the bed and keeping her fully clothed. In closing, Williams's attorney argued Williams had spanked A.B.A. to discipline her, choosing the only belt he had without metal pieces. She argued the State had the burden to prove the elements of intentional abuse and to show the act was not privileged as parental discipline. She then said: "And if you don't find that it was intended, then they have the burden of proof to show beyond a reasonable doubt that he recklessly caused harm, and the same privilege applies to that." Thus, Williams's attorney both raised and argued the defense he claims his counsel overlooked.

¶ 22. In sum, we are not convinced that there was a reasonable probability of a different verdict had Williams's attorney known that the State would request recklessly causing harm to a child as a lesser-included offense. Because Williams's attorney argued reasonable parental discipline as a defense to reckless abuse, and elicited Williams's disciplinary intent in spanking his daughter and the steps he took to ensure her safety, our confidence in the outcome of the trial is not undermined by her failure to anticipate the submission of reckless abuse to the jury. We therefore conclude that there was no prejudice to Williams's defense by his attorney's failure to anticipate recklessly causing harm to a child as a lesser-included offense.

### b. *Failure to Introduce Testimonial Evidence*

¶ 23. Williams next argues that his attorney's misunderstanding of the trial court's ruling on his

motion in limine, and her resulting failure to offer testimony evidence of the discipline he experienced as a child,[4] afforded him ineffective assistance of counsel. Williams contends that the testimony was important evidence relevant to both reckless abuse and to the privilege of parental discipline[5] because both have a subjective component. We disagree.

¶ 24. Determining the standard for "recklessness" under Wis. Stat. § 948.03(b) requires statutory interpretation. We conduct statutory interpretation independently, without deference to the trial court. *State v. Setagord*, 211 Wis. 2d 397, 405–06, 565 N.W.2d 506 (1997). We begin with the plain language of the statute to determine and give effect to legislative intent. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶¶ 44–50, 271 Wis. 2d 633, 681 N.W.2d 110.

¶ 25. Williams argues that recklessly causing harm to a child, like criminal recklessness, contains a subjective component. He points to the Judicial Council Committee Note to Wis. Stat. § 939.24, which explains that criminal recklessness "requires both the creation of an objectively unreasonable and substantial risk of

---

[4] Defense counsel testified at Williams's postconviction motion hearing that if she had understood the court's ruling on the motion in limine, she would have tried to introduce the testimony of Williams's grandmother and aunt to establish Williams was disciplined with a belt as a child.

[5] Williams also contends that the evidence was relevant to whether he intentionally caused harm to A.B.A. because intentional child abuse is a specific intent crime. However, Williams was acquitted of intentionally causing harm to a child. Thus, he cannot show that he was prejudiced in his defense as to intentionally causing harm to a child by his attorney's failure to introduce that evidence.

human death or great bodily harm and the actor's subjective awareness of that risk." He also points to the Wisconsin Jury Instructions on recklessly causing harm to a child, which instruct the jury to "consider all the factors relating to the conduct. These include the following: what the defendant was doing; why he was doing it; how dangerous the conduct was; how obvious the danger was; and whether the conduct showed any regard for the safety of [the child]." Wɪs JI—Cʀɪᴍɪɴᴀʟ 2112. Williams argues that the requirement of a "conscious" disregard for the safety of a child, looking to the surrounding circumstances, includes a subjective component.

¶ 26. However, as the State asserts, reckless child abuse requires the defendant's actions *demonstrate* a conscious disregard for the safety of a child, not that the defendant was subjectively aware of that risk. Wɪs. Sᴛᴀᴛ. § 948.03(1) (defining "recklessly" for purposes of recklessly causing harm to a child as "conduct which creates a situation of unreasonable risk of harm to and demonstrates a conscious disregard for the safety of the child"). In contrast, "criminal recklessness" is defined as when "the actor creates an unreasonable and substantial risk of death or great bodily harm to another human being and the actor is aware of that risk." Wɪs. Sᴛᴀᴛ. § 939.24(1). Thus, "recklessly" causing harm to a child under § 948.03(b) is distinguished from "criminal recklessness," because only the latter includes a subjective component. We therefore conclude that recklessly causing harm to a child, unlike criminal recklessness, does not contain a subjective component.

¶ 27. Because recklessly causing harm to a child is determined on an objective standard, we conclude that

the testimony of Williams's grandmother and aunt would have had no bearing on the jury's determination that Williams recklessly caused harm to A.B.A. Evidence of how Williams was disciplined as a child was not relevant to whether his actions were objectively reasonable. We therefore conclude that the exclusion of this evidence from trial did not prejudice Williams's defense.

¶ 28. Williams also argues that the testimony of his grandmother and aunt was relevant to the defense of reasonable parental discipline, because his history of being disciplined with a belt would show that he subjectively thought his spanking of A.B.A. was reasonable parental discipline. Williams relies on *State v. Kimberly B.*, 2005 WI App 115, ¶ 33, 283 Wis. 2d 731, 699 N.W.2d 641, in which we said: "The test of unreasonableness is met at the point at which a parent ceases to act in good faith and with parental affection and acts immoderately, cruelly, or mercilessly with a malicious desire to inflict pain, rather than make a genuine effort to correct the child by proper means." (Citation omitted.) Williams argues that, in accord with *Kimberly B.*, the testimony of his grandmother and aunt was relevant to show his subjective belief that the amount of force he used to discipline his daughter was reasonable. We disagree.

¶ 29. Under *Kimberly B.*, the privilege of reasonable parental discipline imposes a two-part inquiry. First, the force used must be disciplinary, and not imposed "with a malicious desire to inflict pain." *Id.* Thus, if the parent's acts are not disciplinary, but merely an expression of rage and frustration towards the child, the acts are not protected by the privilege of

reasonable parental discipline.[6] If the acts are disciplinary, they are privileged if the amount and nature of force is reasonable, and not inflicted "immoderately, cruelly, or mercilessly." *Id.* We explained that there are three factors for determining if discipline is reasonable: "(1) the use of force must be reasonably necessary; (2) the amount and nature of the force used must be reasonable; *and* (3) the force used must not be known to cause, or create a substantial risk of, great bodily harm or death." *Id.*, ¶ 30. We also explained that the reasonableness of the amount of force used in imposing discipline is an objective standard:

> Reasonable force is that force which a reasonable person would believe is necessary. Whether a reasonable person would have believed the amount of force used was necessary and not excessive must be determined from the standpoint of the defendant at the time of the defendant's acts. The standard is what a person of ordinary intelligence and prudence would have believed in the defendant's position under the circumstances that existed at the time of the alleged offense.

*Id.*, ¶ 32 (citations omitted).

---

[6] Williams argues that even if the test for reasonable force is objective, the testimony evidence was relevant to whether he intended the use of force as discipline. He contends the prosecutor implied in his closing argument that Williams inflicted the punishment not to discipline A.B.A., but because he was frustrated his evening plans were interrupted. Williams contends the prosecutor thus argued that the nature of his actions were not disciplinary, and the testimony of his grandmother and aunt was necessary to support his testimony that he did intend the spanking as discipline. Because the evidence clearly supports a finding that the amount of force used was unreasonable even if intended as discipline, we conclude that any error by Williams's attorney in failing to introduce the testimony does not undermine our confidence in the outcome of the trial.

¶ 30. As we noted in *Kimberly B.*, the jury instruction on reasonable parental discipline instructs the jurors to consider reasonableness "from the standpoint of the defendant at the time of the defendant's acts." *Id.* (citing WIS JI—CRIMINAL 950). The jury is to consider the "age, sex, physical and mental condition and disposition of the child, the conduct of the child, the nature of the discipline, and all the surrounding circumstances." *Id.*, ¶ 33 (citing WI JI—CRIMINAL 950). The jury instruction thus focuses on the reasonableness of the defendant's actions as applied to the particular child, not whether the defendant's history leads the defendant to believe his or her actions are reasonable. It requires the jury to consider whether a reasonable person, in the position of the defendant at the time and facing that particular child, would consider the amount of force used necessary.

¶ 31. Williams also argues that because we said in *Kimberly B.* that evidence of the defendant's prior acts of child abuse supported the jury in finding the defendant "was aware of when her use of physical force . . . exceeded acceptable norms," it follows that evidence of how Williams was disciplined as a child is relevant to whether he believed the amount of force he used was reasonable. *See id.*, ¶ 36. We disagree.

¶ 32. In *Kimberly B.*, we concluded that evidence that the defendant had previously abused her child, requiring state intervention, supported the jury in finding her acts were abusive rather than disciplinary and thus were not protected by reasonable parental discipline. We explained that because the defendant knew the level of force that was appropriate for discipline, "the jury could reasonably conclude that Kimberly was not making a genuine effort to discipline [her

855

daughter] by proper means for her inappropriate behavior in the mall and that she instead was resorting to excessive and unreasonable force, abusive rather than corrective in nature." *Id.*, ¶¶ 36–37. Here, the testimony supporting Williams's assertion that he was beaten with a belt as a child was not relevant to whether the amount of force he used in spanking A.B.A. was objectively reasonable. We conclude that a parent may not abuse his or her child and claim that such conduct is reasonable based on his or her history of being similarly abused. Because the testimony evidence would not have supported Williams's claim that his conduct was reasonable, we conclude that there was not a reasonable probability that the result of his trial would have been different if the testimony evidence was introduced. Williams's defense was therefore not prejudiced by his attorney's failure to introduce that evidence.

### c. Prosecution's Closing Argument and Defense Counsel's Failure to Object

¶ 33. Williams argues that the prosecutor's closing argument mischaracterized A.B.A.'s mother's testimony by stating she said A.B.A. told her Williams hit her "with that belt, and she called it the biggest, fattest, blackest, blackest, blackest belt there is, and she said it really, really hurt." Williams argues that because A.B.A.'s mother had said A.B.A. "didn't say the really hurt part, but she did say that in the emergency room," and said A.B.A. "actually said it didn't hurt," defense counsel's failure to object amounted to ineffective assistance of counsel. We disagree. The mother's testimony can reasonably be characterized as saying that A.B.A. *did* say it "really hurt"—clarifying that the comment was made later, at the hospital, not during the child's

first report to her mother. Furthermore, the evidence at trial, including the testimony of the emergency room doctor who treated A.B.A., established that the spanking caused pain, and we are thus not persuaded that the failure to object to the prosecutor's closing argument affected the outcome of the trial.

### d. Cumulative Effect of Errors

██

¶ 34. When multiple errors in counsel's representation are alleged by the defendant, we decide ineffective assistance of counsel based on the cumulative effect of those errors. *State v. Zimmerman*, 2003 WI App 196, ¶¶ 34, 47–49, 266 Wis. 2d 1003, 669 N.W.2d 762. As we have explained, none of the errors alleged by Williams raises a reasonable probability that the outcome of his trial would have been different absent that error. Because we have concluded Williams raised and argued the defense he claims his attorney overlooked, the testimony evidence Williams claims his attorney should have introduced would not have supported Williams's contention that his actions were not reckless or were privileged as reasonable parental discipline, and any mischaracterization of testimony by the prosecution was inconsequential, we conclude that Williams was not denied effective assistance of counsel by the cumulative effect of those errors.

### 2. Real Controversy Not Fully Tried

¶ 35. Williams next argues that if we do not find ineffective assistance of counsel, we should grant him a new trial because the real controversy was not fully tried, pursuant to our discretionary power of reversal under WIS. STAT. § 752.35. We decline to do so.

¶ 36. We may grant a new trial in the interest of justice when it appears from the record that the real controversy has not been fully tried. *State v. Peters*, 2002 WI App 243, ¶ 18, 258 Wis. 2d 148, 653 N.W.2d 300. We need not determine that a new trial would likely result in a different outcome. *State v. Watkins*, 2002 WI 101, ¶ 97, 255 Wis. 2d 265, 647 N.W.2d 244. Our discretionary reversal power is formidable, and should be exercised sparingly and with great caution. *Id.*, ¶ 79. Discretionary reversals because the real controversy has not been fully tried have been granted for a variety of reasons: for the erroneous admission or exclusion of evidence, when misunderstandings have thwarted justice, and where an erroneous jury instruction had a significantly adverse impact on the case. *State v. Thomas*, 161 Wis. 2d 616, 625–26, 468 N.W.2d 729 (Ct. App. 1991). We conclude that in this case, the real controversy has been fully tried and thus a discretionary reversal is inappropriate.

¶ 37. Williams first argues that the real controversy was not fully tried because his attorney failed to anticipate the lesser-included offense, thus preventing her from submitting the privilege of reasonable parental discipline and submitting the important testimony evidence on Williams's subjective belief that his actions were reasonable. As we have explained, Williams's counsel both raised and argued the defense of reasonable parental discipline at trial. Her failure to anticipate the submission of recklessness did not prevent her from arguing whether Williams's actions were objectively reasonable, and therefore not reckless.

¶ 38. Further, the element of parental discipline in dispute was whether the discipline imposed was

reasonable. The testimony not heard by the jury was not relevant to the objective reasonableness of the discipline imposed.[7] The elements of recklessness, as well as the privilege of parental discipline, were clearly argued to the trial court.

¶ 39. Williams also argues the prosecutor's mischaracterization of A.B.A.'s mother's testimony requires a new trial in the interest of justice. However, a "criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements . . . must be viewed in context." *State v. Wolff*, 171 Wis. 2d 161, 168, 491 N.W.2d 498 (Ct. App. 1992) (quoting *United States v. Young*, 470 U.S. 1, 11 (1985)). We conclude that any mischaracterization by the prosecutor in his closing argument, when viewed in context, does not require a new trial. The statement that the spanking "really, really hurt" was supported by the evidence, even if not by A.B.A.'s mother's testimony. This is not a case where the prosecutor's statement "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 167 (citation omitted).

---

[7] Williams also argues that the court's refusal to admit the testimony evidence denied him his constitutional right to present a defense because it interfered with his right to introduce important evidence to the jury. *See State v. Johnson*, 118 Wis. 2d 472, 479–80, 348 N.W.2d 196 (Ct. App. 1984). We reject that argument. The trial court did not deny Williams an opportunity to present testimony evidence, but rather required an offer of proof before he could do so. Further, we have concluded that Williams was able to raise and argue the defense of reasonable parental discipline to the jury and that the testimony evidence would not have supported that defense.

¶ 40. Finally, Williams argues that the cumulative effect of the errors at trial resulted in the real controversy not being fully tried and we should thus grant a new trial at our discretion. *See Hicks*, 202 Wis. 2d at 164. We disagree. As explained, we conclude that Williams's case was fully tried. We see no reason to grant a new trial at our discretion.

¶ 41. Because Williams raised the same issues in his postconviction motion as he does on appeal, and because we conclude that Williams did not suffer ineffective assistance of counsel and that the real controversy was fully tried, we conclude it was not an erroneous exercise of discretion for the court to deny Williams's motion for a new trial. We therefore affirm.

*By the Court.*—Judgment and order affirmed.