**COURT OF APPEALS
DECISION
DATED AND FILED**

**November 17, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP6-CR**

Cir. Ct. No. 2017CF28

STATE OF WISCONSIN

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

RICHARD L. PRINGLE,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Door County: DAVID L. WEBER, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

¶1    STARK, P.J.   Richard Pringle appeals a judgment convicting him of one count of second-degree sexual assault of a person who suffers from a mental

illness or deficiency, contrary to WIS. STAT. § 940.225(2)(c) (2017-18).[1]  Pringle also appeals an order denying his motion for postconviction relief.  Pringle argues he is entitled to a new trial in the interest of justice because the real controversy was not fully tried during his jury trial.  Specifically, he contends that the State's expert witness improperly vouched for the victim's credibility, contrary to *State v. Haseltine*, 120 Wis. 2d 92, 352 N.W.2d 673 (Ct. App. 1984), and that the expert's testimony therefore clouded a crucial issue in the case—namely, the victim's credibility.

¶2      Although this is a close case, we ultimately conclude that Pringle is not entitled to a new trial in the interest of justice.  The State's expert witness testified, generally, that in her experience individuals with cognitive or developmental disabilities often lack the sophistication necessary to "feign a situation" or "concoct a story."  The expert witness did not expressly testify, however, that she believed the victim was telling the truth or that the victim, specifically, was incapable of fabricating her account of the sexual assault.  On these facts, we conclude the effect of the expert witness's testimony was not to attest to the victim's truthfulness, and the testimony did not create too great a possibility that the jury abdicated its fact-finding role to the expert witness or failed to independently determine Pringle's guilt.  As such, we reject Pringle's argument that the admission of the expert witness's testimony prevented the real controversy from being fully tried.  We therefore affirm Pringle's judgment of conviction and the order denying postconviction relief.

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

**BACKGROUND**

¶3      Pringle was charged with sexually assaulting Molly,[2] a woman who lived in his apartment building in Sturgeon Bay.  At Pringle's trial, Molly testified that when she returned home from work one day in May or June 2015, Pringle was standing outside the door of his apartment and asked if she wanted to see something.  Molly said yes and went into Pringle's apartment.  Once inside, Molly was standing against a wall when Pringle approached her, put his hand on the wall, and began kissing her.  Pringle then put his hand down Molly's pants and touched her vagina.  Molly testified she told Pringle to stop.  Pringle asked Molly to come into his bedroom to have sex, but she said no and left his apartment.

¶4      The State also elicited testimony at trial from Cindy Zellner-Ehlers (hereinafter, "Ehlers"), a licensed social worker who had been employed for thirty-five years as the developmental disabilities program manager for the Door County Department of Human Services.  Ehlers testified that in the course of her employment, she had worked with Molly for approximately twenty-five years, first as her case manager and later by providing supportive counseling services.

¶5      Ehlers testified that Molly "has cognitive disabilities" and also "carries a diagnosis of cerebral palsy."  She described Molly as being "at the mild range of cognitive disability."  She testified individuals in that range have IQs of between seventy and eighty and function at the level of a twelve- or thirteen-year-old child.  When asked to describe Molly's "sophistication as it relates to her disability," Ehlers responded that Molly is "very well aware of her disability" and

---

[2] Pursuant to the policy underlying WIS. STAT. RULE 809.86, we refer to the victim using a pseudonym.

therefore has a "greater propensity … to want to overcompensate" because she wants to be seen by others as being as normal as possible.

¶6    The State then asked Ehlers, "What about [Molly's] level of sophistication as it relates to concocting a story or conspiring to present a lie, tell a lie, create some sort of false story?" Ehlers responded:

> That's a lesson I learned really early in my career is that that is one thing about people with developmental disabilities, wherever they are in the spectrum. It's really—they don't— they lack the sophistication to be cunning and conspire or feign a situation. I'm not saying it doesn't happen, but it's very rare that it happens. Particularly with people who have cognitive limitations.
>
>   ….
>
> [I]f you're going to conspire, you have to have some kind of thought process that is convoluted enough to be able to concoct a story or create a story. That takes sophistication. That takes thinking skills that are oftentimes far beyond a level that a person with cognitive limitations can master.

Pringle's trial attorney did not object to this testimony.

¶7    Pringle testified in his own defense. He asserted that Molly had been in his apartment only once, in 2007. He acknowledged touching Molly's breast on that occasion, and he admitted that conduct was a sexual assault. He denied, however, that he had sexually assaulted or touched Molly inappropriately in 2015. Pringle testified that he and Molly had a cordial relationship until May 2015, when he and Carla Boyer—a friend of Molly's who lived in the same apartment building—had a dispute over a parking spot. Pringle asserted that after that dispute, Molly stopped talking to him. He theorized that Molly had conspired with Boyer to invent a false allegation against him because she and Boyer were mad at him about the parking spot dispute.

4

¶8 The jury convicted Pringle of the sole charge against him—one count of second-degree sexual assault of a person who suffers from a mental illness or deficiency—based on the 2015 assault. Pringle then moved for postconviction relief, seeking a new trial in the interest of justice on the ground that the real controversy had not been fully tried. Pringle argued that Ehlers' testimony regarding the inability of individuals with cognitive disabilities to concoct stories constituted improper vouching for Molly's credibility, in violation of *Haseltine*. Pringle further argued that the admission of Ehlers' testimony in that regard clouded a crucial issue in the case—namely, "whether [Molly] was telling the truth."

¶9 The circuit court denied Pringle's postconviction motion. The court reasoned that while the prosecutor's question specifically asked about Molly's level of sophistication and ability to concoct a story, Ehlers' answer pertained to people with cognitive disabilities generally, rather than to Molly specifically. The court also observed that Ehlers qualified her answer to the prosecutor's question by "acknowledging that people with this level of sophistication can lie." Thus, Ehlers did not directly testify "that [Molly] should be believed, [or] that she believes that [Molly] was sexually assaulted by Mr. Pringle."

¶10 In addition, the circuit court noted that the jury had been given WIS JI—CRIMINAL 300, which the court stated

> makes it very clear to the jury that it is their duty to scrutinize and to weigh the testimony of witnesses and to determine the effect of the evidence as a whole; that they are the sole judges of the credibility—that is, the believability—of the witnesses and the weight to be given their testimony.

The court also observed that the jury was given WIS JI—CRIMINAL 200, which reminded the jurors that they were not bound by Ehlers' opinions. Under these

5

circumstances, the court concluded the admission of Ehlers' testimony did not prevent the real controversy from being fully tried. Pringle now appeals.

## DISCUSSION

¶11 On appeal, Pringle renews his argument that he is entitled to a new trial in the interest of justice. We have discretion to reverse a judgment or order in the interest of justice "if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried." WIS. STAT. § 752.35. Our power of discretionary reversal under § 752.35 is formidable, however, and we therefore exercise it sparingly, and with great caution. *State v. Henning*, 2013 WI App 15, ¶23, 346 Wis. 2d 246, 828 N.W.2d 235. "Reversals in the interest of justice should be granted only in exceptional cases." *State v. McKellips*, 2016 WI 51, ¶30, 369 Wis. 2d 437, 881 N.W.2d 258 (citation omitted). We independently review whether a defendant is entitled to a new trial in the interest of justice under § 752.35. *State v. Williams*, 2006 WI App 212, ¶12, 296 Wis. 2d 834, 723 N.W.2d 719.

¶12 Here, Pringle argues he is entitled to a new trial in the interest of justice because the real controversy was not fully tried. Wisconsin courts have held that the real controversy was not fully tried in two situations: (1) when the jury was erroneously not given the opportunity to hear important testimony that bore on an important issue of the case; and (2) when the jury had before it evidence not properly admitted which so clouded a crucial issue that it may be fairly said that the real controversy was not fully tried. *State v. Hicks*, 202 Wis. 2d 150, 160, 549 N.W.2d 435 (1996). Pringle argues the second of these situations occurred here. He contends Ehlers' testimony regarding the ability of cognitively disabled individuals to concoct or fabricate stories was improperly admitted in violation of *Haseltine*.

He further argues that Ehlers' testimony so clouded the only disputed issue at trial—i.e., whether Molly was telling the truth about the alleged assault—that it prevented the real controversy from being fully tried.[3]

---

[3] In his brief-in-chief on appeal, Pringle also argues Ehlers' testimony that Molly "could not be fabricating" was inadmissible because it "did not meet the standard for expert testimony" under WIS. STAT. § 907.02 and ***Daubert v. Merrell Dow Pharmaceuticals, Inc.***, 509 U.S. 579 (1993). Pringle concedes that the circuit court did not hold a ***Daubert*** hearing regarding Ehlers' testimony because her "qualifications and expertise were never in question, nor was the utility of expert testimony with respect to [Molly's] diagnosis and daily functioning." Pringle further acknowledges that the State was required to prove that Molly was a person who suffers from a mental illness or deficiency under WIS. STAT. § 940.225(2)(c), and that Ehlers' testimony could have helped the jury to make a determination regarding that issue. Pringle argues, however, that Ehlers' opinion regarding Molly's "[t]ruthfulness" was "not a proper topic for expert testimony" because it was not based upon sufficient facts or data, it was not the product of reliable principles and methods, and there was no showing that Ehlers applied the principles and methods reliably to the facts of the case.

In response, the State argues Pringle forfeited his argument that Ehlers' testimony was inadmissible under WIS. STAT. § 907.02 by failing to object to her testimony on that ground at trial and by failing to raise that argument in his postconviction motion. In the alternative, the State argues Ehlers' testimony was admissible under § 907.02 and, in any event, Pringle has not adequately developed an argument that her testimony was inadmissible under that statute.

In his reply brief, Pringle clarifies that he is "not arguing a claim of error under [WIS. STAT.] § 907.02," and he "does not claim that there should be a reversal under § 907.02, per se." Instead, Pringle asserts the fact that Ehlers' testimony "would have been excluded" under § 907.02 "tangentially supports [his] claim that the testimony caused the real controversy not to be fully tried." Pringle does not, however, further develop an argument in support of his claim that Ehlers' testimony would have been inadmissible under § 907.02.

Although we agree with the State that Pringle forfeited his argument regarding the admissibility of Ehlers' testimony under WIS. STAT. § 907.02, we observe that WIS. STAT. § 752.35 permits us to reverse a conviction if the real controversy was not fully tried, "regardless of whether the proper motion or objection appears in the record." Thus, Pringle's forfeiture of his argument regarding § 907.02 does not prevent him from obtaining a new trial in the interest of justice on that basis.

¶13    In *Haseltine*, this court held that "[n]o witness, expert or otherwise, should be permitted to give an opinion that another mentally and physically competent witness is telling the truth." *Haseltine*, 120 Wis. 2d at 96. The purpose of the *Haseltine* rule is to prevent a witness from usurping the jury's role as "lie detector in the courtroom." *See State v. Pittman*, 174 Wis. 2d 255, 268, 496 N.W.2d 74 (1993) (citation omitted); *see also State v. Kleser*, 2010 WI 88, ¶104, 328 Wis. 2d 42, 786 N.W.2d 144 ("The essence of the rule prohibiting vouching testimony is that such testimony invades the province of the fact-finder as the sole determiner of credibility."). To determine whether a witness's testimony violates *Haseltine*, we examine the testimony's purpose and effect. *Pittman*, 174 Wis. 2d at 268. In addition, even if a witness's testimony violates *Haseltine*, its admission does not constitute reversible error unless the testimony created "'too great a possibility that the jury abdicated its fact-finding role' to the witness or failed independently to find the defendant's guilt." *State v. Patterson*, 2010 WI 130, ¶64, 329 Wis. 2d 599, 790 N.W.2d 909 (citation omitted).

¶14    Although this is a close case, we conclude Ehlers' testimony did not violate *Haseltine*. We acknowledge that the State's question to Ehlers—i.e., "What about [Molly's] level of sophistication as it relates to concocting a story or conspiring to present a lie, tell a lie, create some sort of false story?"—was

---

Nevertheless, we also agree with the State that Pringle's argument regarding WIS. STAT. § 907.02 is inadequately developed. Pringle asserts that Ehlers' testimony regarding Molly's "[t]ruthfulness" was inadmissible because it was not based upon sufficient facts or data, it was not the product of reliable principles and methods, and there was no showing that Ehlers applied the principles and methods reliably to the facts of the case. He does not explain, however, why any of those assertions are true. Moreover, Ehlers' testimony was based on her thirty-five years of experience working with individuals with cognitive disabilities, including Molly, and our supreme court has clarified that "experience-based expert evidence may pass muster as a method under the reliability requirement" of *Daubert* and § 907.02. *See Seifert v. Balink*, 2017 WI 2, ¶67, 372 Wis. 2d 525, 888 N.W.2d 816. For these reasons, to the extent Pringle argues the real controversy was not fully tried because Ehlers' testimony was inadmissible under § 907.02, we reject that argument.

improper. The purpose of that question was clearly to elicit testimony from Ehlers that, because of Molly's cognitive disabilities, she lacked the sophistication necessary to concoct a false story about Pringle sexually assaulting her. Had Ehlers answered the State's question in that manner, we would have had little difficulty concluding that her testimony violated *Haseltine*. After considering the actual testimony that Ehlers provided in response to the State's question, however, we conclude the effect of her testimony was not to vouch for Molly's credibility.

¶15 To explain, although the State asked Ehlers a *specific* question regarding Molly's ability to concoct a false story, in response, Ehlers testified *generally* that individuals with developmental disabilities, "lack the sophistication to be cunning and conspire or feign a situation." Moreover, Ehlers then qualified her response, stating, "I'm not saying it doesn't happen, but it's very rare that it happens." Ehlers continued by testifying that the act of conspiring to concoct a story requires "sophistication" and "thinking skills that are *oftentimes* far beyond a level that a person with cognitive limitations can master." (Emphasis added.)

¶16 Thus, in response to the State's question, Ehlers testified that individuals with developmental or cognitive disabilities often lack the sophistication to concoct false stories, but that is not always the case. Ehlers did not testify that individuals with developmental or cognitive disabilities are categorically unable to concoct false stories, nor did she testify that because Molly has cognitive disabilities, she would have been unable to concoct a story about Pringle sexually assaulting her. Furthermore, Ehlers did not testify that she believed Molly was telling the truth about the sexual assault. Under these circumstances, even if the purpose of the State's question was to elicit testimony from Ehlers that vouched for Molly's credibility, the actual testimony that Ehlers provided in response to the question did not have that effect.

9

¶17    Furthermore, even if we concluded that Ehlers' testimony violated *Haseltine*, that error would not require reversal because Ehlers' testimony did not create too great a possibility that the jury abdicated its fact-finding role to Ehlers or failed to independently determine Pringle's guilt. *See Patterson*, 329 Wis. 2d 599, ¶64. Again, Ehlers did not categorically state that individuals with cognitive disabilities cannot lie or concoct stories. Additionally, she did not state that Molly was incapable of doing so, nor did she testify that she believed Molly was telling the truth about the assault.

¶18    Accordingly, despite Ehlers' testimony that individuals with cognitive disabilities often lack the sophistication necessary to concoct stories, the jury still had to determine whether Molly, specifically, possessed that ability and whether she concocted the story at issue in this case. The jury could have determined that Molly was capable of making up a story about Pringle assaulting her based on the other evidence presented at trial—in particular, Ehlers' testimony that Molly was in the "mild range of cognitive disability," was "very well aware of her disability," and wanted to be seen by others as being as normal as possible. Given that testimony, the jury could have concluded that even if some individuals with cognitive disabilities lack the sophistication to concoct stories, Molly was not one of those individuals.

¶19    In addition, as the circuit court correctly noted, the jury was given WIS JI—CRIMINAL 300, which states that the jurors are "the sole judges of the credibility, that is, the believability, of the witnesses and of the weight to be given to their testimony." The jury was also given a version of WIS JI—CRIMINAL 200, which stated that jurors are "not bound by any expert's opinion." We presume that jurors follow the court's instructions. *State v. Truax*, 151 Wis. 2d 354, 362, 444 N.W.2d 432 (Ct. App. 1989). We must therefore presume that the jurors in this case

understood that it was their responsibility to determine Molly's credibility and that, in doing so, they were not bound by any of Ehlers' opinions. On these facts, we cannot conclude Ehlers' testimony created too great a risk that the jury abdicated its fact-finding role to Ehlers or failed to independently determine Pringle's guilt.

¶20 For the same reasons, we also reject Pringle's argument that the admission of Ehlers' testimony prevented the real controversy from being fully tried. In arguing to the contrary, Pringle asserts that Ehlers' testimony impermissibly clouded the only disputed issue at his trial—i.e., whether Molly was telling the truth about the alleged assault. He therefore argues this case is similar to *State v. Romero*, 147 Wis. 2d 264, 432 N.W.2d 899 (1988).

¶21 In *Romero*, the defendant was accused of sexually assaulting his seven-year-old stepdaughter. *Id.* at 267. At his trial, the State presented the testimony of a social worker who had interviewed the victim after she reported the assault. *Id.* at 268. In response to the State's question as to whether the social worker knew the victim well enough to form an opinion regarding her character for truthfulness, the social worker testified that the victim "was honest with us from the time of the first interview through my subsequent contact with her." *Id.* The State also presented the testimony of a police officer who had investigated the victim's allegations. *Id.* The officer testified that his work routinely required him to assess the credibility of victims and perpetrators in a variety of cases, including sexual assault cases. *Id.* at 268-69. When subsequently asked whether he had formed an opinion as to the victim's character for truthfulness, the officer responded, "In my opinion, [the victim] was being totally truthful with us." *Id.* at 269.

¶22 The *Romero* court concluded the defendant was entitled to a new trial in the interest of justice because the testimony of the social worker and the police

officer regarding the victim's truthfulness prevented the real controversy from being fully tried. *Id.* at 278-80. The court observed that the sole issue at trial was "whether the complainant or the defendant was telling the truth." *Id.* at 279. The court concluded the challenged testimony had clouded that crucial issue because it created "a significant possibility that the jurors, when faced with the determination of credibility, simply deferred to witnesses with experience in evaluating the truthfulness of victims of crime." *Id.*

¶23 Pringle argues that, as in *Romero*, credibility was the "key question" at his trial, but that issue was clouded by "improper vouching by someone with authority." He stresses that his conviction "depended on the jury believing [Molly's] testimony" because there was no "independent evidence" corroborating her account of the assault. Pringle contends that under these circumstances—and given Ehlers' extensive qualifications and experience—her testimony "that [Molly] was incapable of falsifying the story would necessarily carry great weight [with] the jury."

¶24 Pringle's argument in this regard misrepresents Ehlers' testimony. Again, Ehlers did not testify that Molly was incapable of falsifying her account of the assault, nor did she testify that she believed Molly was telling the truth. Ehlers instead testified generally that individuals with cognitive disabilities often lack the sophistication to concoct stories. As such, Ehlers' testimony is not comparable to that of the witnesses in *Romero*, who specifically testified that they believed the victim was telling the truth about the alleged assault. *Romero* is therefore materially distinguishable from this case and does not compel a conclusion that the admission of Ehlers' testimony prevented the real controversy from being fully tried.

**CONCLUSION**

¶25 As we acknowledged above, this is a close case. The State's question to Ehlers asking her to provide an opinion as to whether Molly had the sophistication needed to concoct a false story was clearly improper. The obvious purpose of that question was to elicit testimony from Ehlers that, because of Molly's cognitive disabilities, she would have been unable to fabricate a story about Pringle sexually assaulting her. Critically, however, Ehlers did not respond to the State's question in that manner. Instead, Ehlers testified generally about the ability of individuals with cognitive disabilities to fabricate stories. Moreover, Ehlers did not testify categorically that individuals with cognitive disabilities lack that ability; she merely testified that is often the case.

¶26 On these facts, the effect of Ehlers' testimony was not to vouch for Molly's credibility or to provide an opinion that Molly was telling the truth about the alleged assault. Rather, Ehlers merely provided the jury with general information about the capabilities of individuals with cognitive disabilities. Ehlers' testimony did not prevent the jury from drawing its own conclusions about whether Molly was telling the truth. As such, we cannot conclude that Ehlers' testimony created too great a risk that the jury abdicated its fact-finding role to Ehlers or that her testimony so clouded the crucial issue of Molly's credibility as to prevent the real controversy from being fully tried. Thus, despite the State's improper question, we reject Pringle's argument that this is the type of "exceptional" case warranting discretionary reversal in the interest of justice.

*By the Court.*—Judgment and order affirmed.

Not recommended for publication in the official reports.

13