COURT OF APPEALS
DECISION
DATED AND FILED

March 31, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2355-CR**

Cir. Ct. No. **2021CF4513**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

KEENAN DEONTAE BRYANT,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Milwaukee County: JEFFREY A. WAGNER, Judge. *Affirmed.*

Before White, C.J., Colón, P.J., and Donald, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Keenan Deontae Bryant appeals from a judgment of conviction for second-degree intentional homicide and first-degree recklessly endangering safety and an order of the trial court denying his postconviction motion without a hearing. For the reasons set forth below, we affirm.

## BACKGROUND

¶2 On October 29, 2021, the State charged Bryant with first-degree intentional homicide and first-degree recklessly endangering safety, both with use of a dangerous weapon, after Bryant shot and killed Daniel Zeichert and fired additional shots that nearly hit Zeichert's girlfriend, who was standing nearby.

¶3 As set forth in the criminal complaint, Bryant was dating Zeichert's daughter and the two were living together at Zeichert's mother's house. On the day of the shooting, Zeichert and his girlfriend went over to the house to fix Zeichert's truck that was sitting in the driveway. When Zeichert realized that Bryant was in the back bedroom, Zeichert went to the bedroom to confront Bryant about Bryant's suspected abuse of his daughter and to tell Bryant that he had to leave. Almost immediately after Zeichert opened the door, several shots rang out, and Zeichert fell to the ground in the hallway and died after sustaining three gunshot wounds—one to his upper right chest, one to his lower back, and one to his forearm. By the time police arrived, Bryant had fled the scene and hid the gun at a nearby park. Zeichert's mother, girlfriend, and daughter, however, were at the house and spoke to police. Police recovered six fired bullets from the scene.

¶4 Prior to trial, Bryant sought to introduce evidence of several of Zeichert's social media posts under the theory that the social media posts demonstrated that Zeichert harbored a racial animus towards black people such as Bryant, that Zeichert was violent and aggressive, and that Bryant had reason to

2

fear for his life when Zeichert entered the bedroom. The trial court denied Bryant's motion.

¶5 The case proceeded to a jury trial. At trial, the State argued that Zeichert went to confront Bryant about abusing his daughter and Bryant immediately fired multiple shots in Zeichert's direction when Zeichert opened the bedroom door. Bryant, on the other hand, presented the general theory that Zeichert physically attacked him and the two struggled over the gun that Bryant kept near the bed. Bryant contended that, during this struggle, the gun went off multiple times, resulting in Zeichert's three gunshot wounds and several other gunshots throughout the house. In other words, Bryant argued he shot Zeichert in self-defense after Zeichert attacked him. The State presented testimony from several witnesses, including Zeichert's mother, daughter, and girlfriend, and Bryant testified in his own defense.

¶6 The jury ultimately found Bryant guilty of second-degree intentional homicide and first-degree recklessly endangering safety, and the trial court sentenced him to 40 years of imprisonment, bifurcated as 30 years of initial confinement and 10 years of extended supervision.

¶7 Bryant subsequently filed a postconviction motion in which he argued that his trial counsel was ineffective for failing to investigate and present evidence of his post-traumatic stress disorder (PTSD) as part of his self-defense defense. The trial court denied Bryant's motion without a hearing. Bryant now appeals. Additional relevant facts will be set forth as necessary.

**DISCUSSION**

¶8      On appeal, Bryant raises four main arguments.  He argues that his trial counsel was ineffective for failing to investigate and present evidence of his PTSD as part of his defense.  He also argues that the trial court erroneously excluded evidence of Zeichert's offensive social media posts.  Alternatively, Bryant argues that he should be granted a new trial in the interest of justice because of his trial counsel's failure to investigate and present his PTSD as part of his defense and the trial court's error in excluding Zeichert's social media posts.  Finally, Bryant argues that the State failed to introduce sufficient evidence to support his conviction for recklessly endangering safety.

### I.      Ineffective Assistance of Counsel

¶9      As noted, Bryant first argues on appeal that he received ineffective assistance of counsel when his counsel failed to investigate and present evidence of Bryant's PTSD.  In making this argument, Bryant points to an evaluation completed over a year after his conviction in which he was given a formal PTSD diagnosis as a result of a combination of childhood traumas and military service.

¶10      In reviewing Bryant's claim of ineffective assistance of counsel, we must first "determine whether the motion on its face alleges sufficient material facts that, if true, would entitle the defendant to relief." ***State v. Ruffin***, 2022 WI 34, ¶27, 401 Wis. 2d 619, 974 N.W.2d 432.  "[I]f the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." ***State v. Allen***, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433.

¶11 A defendant must establish two elements to demonstrate that he received ineffective assistance of counsel: (1) "that counsel's performance was deficient" and (2) "that the deficient performance resulted in prejudice to the defense." *State v. Balliette*, 2011 WI 79, ¶21, 336 Wis. 2d 358, 805 N.W.2d 334. Should the defendant fail to establish one prong, we need not address the other. *See State v. Johnson*, 153 Wis. 2d 121, 128, 449 N.W.2d 845 (1990).

¶12 The State argues that Bryant's motion is both insufficiently pled and the record conclusively demonstrates that Bryant is not entitled to relief. We agree. Importantly, no where does Bryant indicate that he told trial counsel of any PTSD diagnosis or possibility that he might be suffering from PTSD where trial counsel would have known to investigate the possibility of presenting Bryant's PTSD as part of Bryant's self-defense claim. "An investigation into a client's mental capacity is unwarranted unless the information known *before* trial suggests the need for such an exploration." *State v. Pico*, 2018 WI 66, ¶26, 382 Wis. 2d 273, 914 N.W.2d 95. Absent such information having been provided to trial counsel, Bryant's claim of ineffective assistance of counsel fails and Bryant is not entitled to a hearing.

## II. Exclusion of Evidence

¶13 Bryant next argues that the trial court erroneously excluded evidence of social media posts that Bryant contends demonstrated that Zeichert harbored racial animus towards black individuals such as Bryant. We review the trial court's decision "to admit or exclude evidence under an erroneous exercise of discretion standard." *Martindale v. Ripp*, 2001 WI 113, ¶28, 246 Wis. 2d 67, 629 N.W.2d 698.

5

¶14    In this case, the social media posts that Bryant sought to admit amount to a type of other-acts evidence bearing on the character of the victim that is commonly referred to as *McMorris* evidence. *See McMorris v. State*, 58 Wis. 2d 144, 205 N.W.2d 559 (1973). Generally speaking, *McMorris* evidence speaks to the violent character of the victim as a means of supporting a self-defense claim:

> When self-defense is raised as an issue, and if there is a factual basis to support a self-defense claim, the defendant may, in support of the defense, establish what the defendant believed to be the victim's violent character by proving prior specific instances of violence within [the defendant's] knowledge at the time of the incident.

*State v. Wenger*, 225 Wis. 2d 495, 507, 593 N.W.2d 467 (Ct. App. 1999).

¶15    In furtherance of his self-defense claim, Bryant sought to admit Zeichert's social media posts that he had seen to show that Zeichert had violent tendencies and therefore Bryant had reason to fear for his life when Zeichert entered the bedroom. The trial court, however, cited WIS. STAT. § 904.03 (2023-24)[1] and excluded the social media posts on the grounds that the posts would be unfairly prejudicial. Based on the record before us, we discern no erroneous exercise of discretion.

---

[1] WISCONSIN STAT. § 904.03 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

All references to the Wisconsin Statutes are to the 2023-24 version.

### III.    A New Trial in the Interest of Justice

¶16    Bryant additionally argues that his trial counsel's failure to investigate and present evidence of his PTSD and the trial court's exclusion of Zeichert's social media posts warrants a new trial in the interest of justice. We disagree.

¶17    Our power to grant a new trial in the interest of justice is a discretionary reversal power that "should be exercised sparingly and with great caution." *State v. Williams*, 2006 WI App 212, ¶36, 296 Wis. 2d 834, 723 N.W.2d 719. Only in "exceptional cases" will we grant a new trial in the interest of justice. *State v. Kucharski*, 2015 WI 64, ¶23, 363 Wis. 2d 658, 866 N.W.2d 697. We independently determine whether to grant a new trial in the interest of justice. *Williams*, 296 Wis. 2d 834, ¶12.

¶18    Having previously rejected Bryant's two arguments for a new trial on their merits, we conclude that this is not an exceptional case that warrants an exercise of our discretionary reversal power, and we conclude that Bryant is not entitled to a new trial in the interest of justice.

### IV.    Sufficiency of the Evidence

¶19    Bryant last argues that the State failed to present sufficient evidence to support his conviction for first-degree recklessly endangering safety as it relates to the gun shots that nearly hit Zeichert's girlfriend. In particular, he argues that the State failed to present evidence that Bryant knew that Zeichert's girlfriend was in the house and, therefore, he could not have known that he was endangering her safety.

¶20    In reviewing a challenge to the sufficiency of the evidence, this court

> may not reverse a conviction unless the evidence, viewed most favorably to the [S]tate and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt.

*State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990). "[A]n appellate court may not substitute its judgment for that of the trier of fact," and "[i]f any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict[.]" *Id.* at 507. We review a challenge to the sufficiency of the evidence de novo. *State v. Smith*, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410.

¶21  As the State points out, Bryant may not have seen Zeichert's girlfriend at the time the shots were fired, but there was sufficient testimony introduced at trial from which the jury could find that Bryant was aware of her presence. Zeichert's girlfriend testified that she was standing in the doorway when the first shots were fired. She further testified that Zeichert called out to her to call 911. Based on this testimony, the jury could reasonably find that Bryant was aware of the presence of another person, such as Zeichert's girlfriend, and consequently, we conclude that the evidence was sufficient to support Bryant's conviction for first-degree recklessly endangering safety.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

8