COURT OF APPEALS
DECISION
DATED AND FILED

April 16, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2022AP796-CR**

STATE OF WISCONSIN

Cir. Ct. No.  2017CF2585

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

DERRICK MONTOREL WILSON,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County:  DAVID A. HANSHER and MILTON L. CHILDS, SR., Judges. *Affirmed*.

Before Donald, P.J., Geenen and Colón, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.  Derrick Montorel Wilson, *pro se*, appeals from the judgment convicting him of two counts of armed robbery, and the order denying postconviction relief.  On appeal, Wilson contends in pertinent part that some of the evidence in his case should have been suppressed, and that he is entitled to a new trial based on newly discovered evidence and in the interest of justice.  For the reasons discussed below, we affirm.

## BACKGROUND

¶2      A criminal complaint was filed charging Wilson with three counts of armed robbery.  According to the complaint, Wilson robbed, at gunpoint, an American Inn motel, a BP gas station, and a Dollar Tree store.

¶3      The case proceeded to trial.[1]  The jury found Wilson guilty of two counts of armed robbery for the motel and the gas station.  The jury was deadlocked on the armed robbery at the store, and the charge was ultimately dismissed without prejudice.

¶4      Relevant to this appeal, at trial, R.J. testified that he was working at the motel during the robbery.  According to R.J., on June 13, 2017, a man, later identified as Wilson, came to the motel and rented a room.  Wilson then left the motel.  The following day, Wilson returned around 9:45 a.m. and asked for a key to his room.  R.J. gave him a new key, and told him check-out was at 11:00 a.m.  When the check-out time approached, R.J. began making check-out rounds, which

---

[1]  The Honorable David A. Hansher presided over the trial, and the Honorable Milton L. Childs, Sr., presided over the postconviction proceedings.  We refer to Judge Hansher as the trial court and Judge Childs as the postconviction court.

2

included going to the room Wilson was staying in and knocking on the door. Wilson answered the door, and R.J. told him it was check-out time.

¶5 As R.J. walked back to his office, he noticed that Wilson was following him. Wilson grabbed him from behind and pointed a gun at him. Wilson asked R.J. to open the motel office door, and demanded money. R.J. gave him all of the money in the register. R.J. identified Wilson in a live lineup and in court. R.J. testified that Wilson had on a Lacoste hat with an alligator during the robbery.

¶6 The jury viewed surveillance video taken from the motel. A latent print examiner testified that Wilson's fingerprint was found on a plastic bag on the floor of the motel room where the robber had stayed. Milwaukee Police Officer Christopher Schlachter testified that he recovered a Lacoste hat from Wilson's bedroom. He also testified that Wilson's mother identified Wilson in a still photo taken from the motel's surveillance video.[2]

¶7 T.W. testified about the gas station robbery. On May 26, 2017, T.W. was working the cash register when a man, later identified as Wilson, pointed a gun at him and asked for money. T.W. identified Wilson in a photo array. Detective Schlachter identified Wilson in court as the person that T.W. had identified in the photo array. During T.W.'s testimony, the jury viewed surveillance video from the gas station.

¶8 Philip Moseley, Wilson's probation agent, testified that he had met with Wilson approximately twelve or thirteen times since 2016. Moseley

---

[2] At trial, Wilson's mother denied identifying him.

3

identified Wilson as the individual in still photographs from the motel and gas station surveillance videos. Moseley explained that he was able to identify Wilson based on his facial structure and mouth.

¶9 After the State rested, Wilson told the trial court that he wanted to call his alibi witnesses. Wilson's trial attorney responded that he had looked into this issue and was not going to present an alibi defense. After Wilson waived his right to attorney-client privilege, trial counsel explained on the record that he had spoken to Wilson's mother. Wilson's mother said that Wilson left her home around the time of the motel robbery and was gone for thirty to forty minutes. Trial counsel stated that he had discussed this with Wilson prior to trial and Wilson accepted that he would not have an alibi defense at trial.

¶10 In response, Wilson alleged that trial counsel had fabricated his explanation. The trial court concluded that Wilson's request for alibi witnesses was done for "dilatory reasons." The court also found that Wilson had consulted with trial counsel prior to trial and had agreed not to pursue an alibi defense.

¶11 Postconviction, Wilson, *pro se*, filed a motion seeking a new trial, or in the alternative, an evidentiary hearing.[3] He alleged that the trial court erroneously denied his right to self-representation. He also alleged that trial counsel was ineffective for failing to: (1) investigate "an identity and alibi defense"; (2) file pretrial motions; (3) file a ***Franks-Mann***[4] challenge to the

---

[3] Wilson was appointed counsel for his direct appeal. On June 23, 2021, the postconviction court granted counsel's motion to withdraw.

[4] *See **Franks v. Delaware***, 438 U.S. 154 (1978); ***State v. Mann***, 123 Wis. 2d 375, 367 N.W.2d 209 (1985).

4

probable cause for his warrantless arrest; (4) call alibi witnesses; and (5) investigate the motel, which would have revealed motel registration cards indicating that Wilson stayed there in the past. In addition, he alleged the motel registration cards and a chronological log from Moseley[5] constituted newly discovered evidence. With respect to the chronological log, Wilson argued that it would establish that Moseley's out-of-court identification of Wilson was the "product of police misconduct and impermissibly suggestive ID procedures."

¶12 Attached to Wilson's postconviction motion were police reports, motel registration cards, a probable cause statement, the arrest-detention report, a page of Moseley's chronological log, and affidavits from three proposed alibi witnesses for the armed robbery at the motel.[6] The affiants claimed that Wilson was at a family party on the day of the motel robbery.

¶13 The postconviction court set a briefing schedule for the State to respond to the postconviction motion and Wilson to file a reply. Before the State filed its response, Wilson made additional filings, including a motion for discovery and a memorandum of law in support of his postconviction motion. After the State filed its response to Wilson's postconviction motion, Wilson filed a motion seeking relief pending appeal, a motion requesting leave to file an additional ten pages to his postconviction motion, and a motion for leave to

---

[5] The chronological log to which Wilson refers consists of typed entries created by Moseley relating to Wilson. The first entry included with the postconviction motion indicates that police were investigating an armed robbery at the American Inn motel, Wilson was identified by his fingerprints left at the motel, and Wilson was arrested. A subsequent entry indicates that Moseley met with police and identified Wilson in a photo array.

[6] The motel registration cards and parts of the affidavits submitted with the postconviction motion are unreadable.

supplement his postconviction motion. In Wilson's motion for leave to supplement his postconviction motion, he included two **Brady**[7] claims related to his arrest and the failure of the State to seek out the motel registration cards.

¶14 The postconviction court issued an order granting Wilson's request to add ten additional pages to his postconviction motion. In light of the new arguments in Wilson's motion for leave to supplement his postconviction motion, the court also ordered the State to file a supplemental response. The court further ordered Wilson to file a single reply brief addressing both of the State's responses. The order warned Wilson that the court would "not entertain further piecemeal litigation" as the court had already granted Wilson "significant latitude" by allowing him to file an additional ten pages with new arguments. The order also indicated that if Wilson needed to include more issues or arguments he had to withdraw his current submissions and refile a single postconviction motion raising all issues.

¶15 Before the State filed its supplemental response, Wilson filed a reply to the State's original response brief. After the State filed its supplemental response, Wilson filed a motion requesting an extension of the reply brief page limit.

¶16 On March 25, 2022, at a scheduled hearing, the postconviction court informed the parties that it needed more time to issue a decision. Wilson told the court that he wanted to challenge the court's jurisdiction and competency. The State objected to Wilson's request to add more claims given Wilson's numerous

---

[7] *See* **Brady v. Maryland**, 373 U.S. 83 (1963).

filings, the court's order that it would not entertain piecemeal litigation, and the need for finality. The court indicated that it would only address the issues that had been previously raised, and denied Wilson's request to add additional claims or submit additional motions.

¶17 Subsequently, on April 8, 2022, Wilson filed three more motions: a motion to withdraw his pending postconviction motion, a motion for reconsideration asking the court to reconsider his request to add the jurisdiction and competency claims, and an amended motion for postconviction relief.

¶18 On April 22, 2022, at the scheduled decisional hearing, the postconviction court acknowledged the three motions, but denied all of them and ordered them stricken from the record. The court stood by its previous decision that no additional motions would be permitted. As to Wilson's properly filed claims, the court found that Wilson's request to proceed *pro se* was untimely, trial counsel did not perform deficiently, there was no **Brady** violation, and Wilson's arrest was legal. Lastly, the court found that Wilson did not meet his burden to establish newly discovered evidence. This appeal follows.

## DISCUSSION

¶19 On appeal, Wilson raises seven claims in his initial brief: (1) the postconviction court erroneously exercised its discretion when it denied and dismissed Wilson's motion for reconsideration and his amended postconviction motion; (2) Wilson was entitled to an evidentiary hearing due to trial counsel's failure to challenge the lack of jurisdiction; (3) the State committed a **Brady** violation; (4) the trial court lacked competency; (5) the out-of-court identifications and hat should have been suppressed; (6) Wilson is entitled to a new trial based on

7

newly discovered evidence; and (7) Wilson is entitled to a new trial in the interest of justice.[8]

¶20    In his reply brief, Wilson concedes that his first claim is "undeveloped" as it is "poorly argued" and "not well supported by legal authority," and requests that this court disregard the claim. He also concedes that his second and third claim are "meritless" as they were "defectively pled." Wilson then goes on to state that this "leaves the last two claims"—the newly discovered evidence claim and the new trial in the interest of justice claim.

¶21    Based on our review of the briefs and the record, we accept Wilson's concessions with respect to his first three claims. Accordingly, below, we address Wilson's newly discovered evidence claim and new trial in the interest of justice claim. We also address Wilson's suppression claims as he does not explicitly concede these arguments and references them in his reply brief.[9]

---

[8] In his initial brief, Wilson does not raise, and thus, abandons some of his postconviction claims, including his Sixth Amendment claim, his ineffective assistance of counsel claim based on trial counsel's failure to call alibi witnesses and file a *Franks-Mann* motion, and his discovery claim. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) ("[A]n issue raised in the [lower] court, but not raised on appeal, is deemed abandoned.").

[9] In his reply brief to this court, Wilson also does not explicitly discuss his fourth claim—that the trial court lacked competency. The State's response contends that the postconviction court properly exercised its discretion when it denied Wilson's request to add his competency claim to his postconviction motion. Given Wilson's concession that the postconviction court did not erroneously exercise its discretion and his failure to respond to this claim in his reply brief, we do not address this issue further. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (holding that an appellant's failure to respond in a reply brief to an argument made in the respondent's brief may be taken as a concession).

## I.    Suppression Claims

¶22    As we understand Wilson's postconviction filings, he contends that Moseley's identification of him and the Lacoste hat should have been suppressed. Neither of these issues were raised during the trial court proceedings.

¶23    The State addresses these issues under the rubric of ineffective assistance of counsel. In his reply brief, Wilson insists that he did not raise these claims as ineffective assistance of counsel claims.

¶24    In general, issues not preserved during trial court proceedings are forfeited. *State v. Huebner*, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727 ("It is a fundamental principle of appellate review that issues must be preserved at the [trial] court. Issues that are not preserved at the [trial] court, even alleged constitutional errors, generally will not be considered on appeal."). Wilson does not cite any case law supporting why these issues can now be pursued on appeal. We typically decline to consider arguments that are undeveloped and unsupported by legal authority. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992). Further, even if we were to construe these issues as ineffective assistance of counsel claims, Wilson does not prevail.

¶25    To succeed on an ineffective assistance of counsel claim, a defendant must establish that his or her attorney's performance was deficient as well as prejudicial to his or her defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate deficient performance, the defendant must show that counsel's actions or omissions "fell below an objective standard of reasonableness." *Id.* at 688. To demonstrate prejudice, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a

probability sufficient to undermine confidence in the outcome." *Id.* at 694. We need not address both prongs of the *Strickland* test if the defendant does not make a sufficient showing on one of the prongs. *Id.* at 697.

¶26 A defendant alleging ineffective assistance of counsel must seek to preserve counsel's testimony in a postconviction hearing. *State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979). The defendant, however, is not automatically entitled to such a hearing. *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433.

¶27 When deciding whether a defendant is entitled to an evidentiary hearing, we first independently determine whether the motion on its face alleges sufficient material facts that, if true, would entitle the defendant to relief. *State v. Ruffin*, 2022 WI 34, ¶27, 401 Wis. 2d 619, 974 N.W.2d 432. Next, we independently determine whether the record conclusively demonstrates the defendant is not entitled to relief. *Id.*, ¶27. "If the motion does not raise facts sufficient to entitle the defendant to relief, or if it presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the [postconviction] court has the discretion to grant or deny a hearing." *Id.*

¶28 Our review of a postconviction motion requires us to consider the allegations "within the four corners of the document itself." *Allen*, 274 Wis. 2d 568, ¶23. The motion must "allege the five 'w's' and one 'h'; that is, who, what, where, when, why, and how." *Id.*

¶29 Wilson's postconviction filings contend that Moseley's identifications of him were "unreliable" and the result of an "impermissibly suggestive" photo lineup. As "proof" that Moseley's identifications were tainted,

Wilson points to Moseley's chronological log. The log, however, does not establish police misconduct or an impermissible identification. Thus, we conclude that this claim was insufficiently pled.

¶30     Similarly, Wilson's argument that the Lacoste hat found in his mother's residence should have been suppressed was also insufficiently pled. Wilson claims that his mother did not have authority to consent to the search. Wilson, however, does not explain how he would prove this at an evidentiary hearing.

¶31     Moreover, even if we assume that trial counsel performed deficiently, Wilson has failed to sufficiently allege prejudice. His postconviction filings stated that he was prejudiced, but did not explain how the errors would have undermined confidence in the outcome. *See **Strickland***, 466 U.S. at 694. Thus, we conclude that the postconviction court properly denied Wilson's suppression claims without an evidentiary hearing.[10]

## II.     Newly Discovered Evidence

¶32     Next, we address Wilson's contention that the motel registration cards and Moseley's chronological log constitute newly discovered evidence.[11]

---

[10]  Wilson suggests that the State conceded Wilson's arguments by making its response "entirely about the discretion of the trial court and the insufficiency of Mr. Wilson's motion." As the State observes, however, a lower court decision may be affirmed on alternative grounds. *See **Blum v. 1st Auto & Cas. Ins. Co.***, 2010 WI 78, ¶27 n.4, 326 Wis. 2d 729, 786 N.W.2d 78 ("[I]t is well-established law in Wisconsin that an appellate court may sustain a lower court's ruling 'on a theory or on reasoning not presented to the lower court.'" (citation omitted)). Therefore, we reject Wilson's argument that the State conceded his claims.

[11]  In his reply brief, Wilson asserts that his newly discovered evidence claim should be analyzed under the rubric for a new trial in the interest of justice. Nonetheless, for the sake of completeness, we analyze his claim under the newly discovered evidence criteria.

11

¶33    The test for newly discovered evidence is well established. "[A] defendant must prove:  '(1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking the evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative.'" *State v. Plude*, 2008 WI 58, ¶32, 310 Wis. 2d 28, 750 N.W.2d 42 (citation omitted).  If a defendant satisfies his burden on all four of these elements, the court must then determine whether a reasonable probability exists that a different result would be reached at trial.  *State v. Avery*, 2013 WI 13, ¶25, 345 Wis. 2d 407, 826 N.W.2d 60.  "A reasonable probability of a different result exists if there is a reasonable probability that a jury, looking at both the old and the new evidence, would have a reasonable doubt as to the defendant's guilt." *Id.*

¶34    When a defendant moves for a new trial on the basis of newly discovered evidence, the postconviction court must hold an evidentiary hearing only if "the motion on its face alleges sufficient material facts that, if true, would entitle the defendant to relief." *State v. Love*, 2005 WI 116, ¶26, 284 Wis. 2d 111, 700 N.W.2d 62 (citation omitted).  This is a question of law we review *de novo* "based on the specific factual allegations made and the record as a whole." *State v. McAlister*, 2018 WI 34, ¶25, 380 Wis. 2d 684, 911 N.W.2d 77.  However, "'if the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief,' the decision to grant or deny a hearing is within the [postconviction] court's discretion." *Id.*, ¶26 (citation omitted).

¶35    As the State observes, in Wilson's postconviction filings, he failed to adequately allege sufficient facts that the evidence was newly discovered.  Wilson alleged that his trial counsel was "unwilling to seek" the motel registration cards and the chronological log, and he "could not afford to hire an investigator[.]"

12

Such allegations do not establish that the evidence in fact was "discovered after the conviction," or that Wilson "was not negligent in seeking the evidence[.]" *See Plude*, 310 Wis. 2d 28, ¶32. Additionally, Wilson does not cogently explain why the motel registration cards and the chronological log were "not merely cumulative" or would yield "a reasonable probability that a jury, looking at both the old and the new evidence, would have a reasonable doubt" as to his guilt. *See Avery*, 345 Wis. 2d 407, ¶25. As a result, we conclude that Wilson is not entitled to an evidentiary hearing or a new trial based on newly discovered evidence.

### III.  New Trial in the Interest of Justice

¶36   Lastly, Wilson contends that he is entitled to a new trial in the interest of justice based on the motel registration cards. We disagree.

¶37   We may grant a new trial in the interest of justice if our independent review of the record reveals that the real controversy was not fully tried. *See* WIS. STAT. § 752.35 (2021-22);[12] *State v. Williams*, 2006 WI App 212, ¶12, 296 Wis. 2d 834, 723 N.W.2d 719. "The power to grant a new trial when it appears the real controversy has not been fully tried 'is formidable, and should be exercised sparingly and with great caution.'" *State v. Sugden*, 2010 WI App 166, ¶37, 330 Wis. 2d 628, 795 N.W.2d 456 (citation omitted). We exercise our power to grant a discretionary reversal "only in exceptional cases." *Id.* (citation omitted).

¶38   According to Wilson, the motel registration card evidence indicated that Wilson had stayed in the motel room at issue approximately two months prior

---

[12] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

13

to the robbery. This, however, does not explain the bag on the floor of the motel room with Wilson's fingerprint that was discovered immediately after the robbery. As Wilson acknowledges, during the trial, his attorney questioned R.J. regarding the possibility that the bag may have been left by someone who had previously stayed in the room, and R.J. testified that it was unlikely because the rooms are cleaned after someone checks out. Additionally, there were other items that were out of place in the room, which would have been caught by the cleaning staff.

¶39 Moreover, as the State asserts, the motel registration card evidence does not negate the other evidence presented at trial, which included R.J.'s identification of Wilson and the surveillance video footage. Thus, based on our review of the record, we are not persuaded that this is an "exceptional case" warranting reversal. *See **id.***

## CONCLUSION

¶40 In sum, for all of the reasons stated above, we conclude that Wilson is not entitled to relief. We reject Wilson's suppression claims and his request for a new trial.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.