COURT OF APPEALS
DECISION
DATED AND FILED

September 6, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP918-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF633

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JESSE E. BODIE,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Dane County: JOHN D. HYLAND, Judge. *Affirmed*.

Before Kloppenburg, P.J., Blanchard, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Jesse E. Bodie appeals a judgment of conviction for attempted second-degree intentional homicide and a postconviction order that denied his request for a new trial or, alternatively, resentencing before a different circuit court. Bodie argues that he is entitled to a new trial on three grounds—plain error, ineffective assistance of counsel, and in the interest of justice—because the prosecution elicited testimony about the reactions of several child witnesses to the shooting at issue and improperly emphasized the effect of the shooting on children in its closing arguments. In the alternative, Bodie argues that he is entitled to resentencing because the circuit court was objectively biased at the time of sentencing.

¶2 We conclude that Bodie is not entitled to a new trial on any of the three grounds he raises. We also conclude that Bodie is not entitled to resentencing because he has not shown that the circuit court was objectively biased in sentencing him. Therefore, we affirm.

## BACKGROUND

¶3 There is no dispute as to the following material facts.

¶4 Officers with the Madison Police Department were dispatched to an apartment complex to investigate a report of gunshots. Upon arrival, officers observed an individual—later identified as A.B.—lying on the ground with five gunshot wounds.[1] A.B. was taken to the hospital where he received life-saving

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86 (2021-22), we refer to the victim and all witnesses using initials that do not correspond to their actual names. All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

2

medical care. There is no dispute that A.B.'s wounds would have resulted in death but for the emergency medical care he received.

¶5 Police officers interviewed multiple individuals who witnessed the shooting, including C.D., Bodie's then-romantic partner, who lived at the apartment complex where the shooting occurred. C.D. told the following to an officer. A.B. is the son of C.D.'s godmother, and the godmother frequently cared for C.D.'s children. Bodie and C.D.'s godmother had a heated argument in C.D.'s apartment the previous day, which spurred a confrontation between A.B. and Bodie during which Bodie shot A.B. C.D. and her three children—the toddler son whom she shares with Bodie and her two daughters, ages 8 and 11, from another relationship—were nearby when the shooting occurred.

¶6 Bodie was charged with one count of attempted first-degree intentional homicide, one count of felony bail jumping, and one count of possession of a firearm by a felon. Bodie pled guilty to the bail jumping and firearm possession charges and not guilty to the attempted first-degree homicide charge. The case proceeded to a four-day jury trial on the attempted first-degree homicide charge.

**Trial**

¶7 At trial, the prosecution presented a surveillance video from the apartment complex that visually recorded the entire interaction between Bodie and A.B. The video showed a mid-sized SUV parked parallel to a curb in a parking lot. A sedan drove past this parked SUV and abruptly stopped in front of the SUV, at an angle perpendicular to the SUV. A.B. got out of the driver's side of the sedan and approached the passenger side of the SUV. Bodie got out of the passenger side of the SUV, keeping his right arm and hand behind his back. A.B.

approached Bodie and, after a few seconds, Bodie stepped backwards towards the SUV and appeared to fire a gun held in his right hand at A.B. As A.B. fell to the ground, Bodie appeared to fire the gun several more times at A.B., who subsequently collapsed on the ground. Bodie got back into the passenger side of the SUV, and it drove away. According to the video's timestamps, the entire interaction between Bodie and A.B. lasted less than 30 seconds.

¶8 The prosecution called A.B. as a witness, who testified to the following about the interaction recorded on the video. A.B. confronted Bodie to ask him about Bodie's alleged mistreatment of A.B.'s mother the previous day. Bodie responded to the effect, "Man, you know your mom is crazy." A.B. saw Bodie turning around as if to return to the SUV, then A.B. heard gunshots and fell to the ground. A.B. was not carrying any weapons, and he did not threaten or lunge at Bodie at any time during this interaction.

¶9 The prosecution also played portions of the Safe Harbor forensic audiovisual interviews of C.D.'s 8- and 11-year-old daughters, who were in the back seat of the SUV at the time of the shooting.[2] The two children gave similar accounts of seeing A.B. approach the SUV and Bodie stepping out and shooting A.B. The prosecution also played a Safe Harbor audiovisual interview of Bodie's 10-year-old nephew who saw the shooting from a nearby apartment building window facing the parking lot where the shooting occurred. In the interview,

---

[2] Although these two children were subpoenaed, C.D. testified that they were not available to testify during the trial. The parties stipulated to the admission of portions of the children's Safe Harbor audiovisual interviews and the accompanying transcripts. Additionally, the court conducted a colloquy with Bodie and obtained his waiver of his constitutional right to confront these two witnesses. Bodie does not raise any argument on appeal alleging that his constitutional right to confront these two witnesses was violated.

Bodie's nephew said that he heard A.B. tell Bodie, "What did you just say about my mom?" before seeing Bodie shoot A.B. Bodie's nephew testified at trial and was subject to examination by the parties.

¶10 The prosecution also called C.D. as a witness, who testified to the following. C.D. was the driver of the SUV in which Bodie was a passenger before and after the shooting. A.B. and Bodie had a calm, ten- to fifteen-minute discussion before C.D. heard gunshots. Bodie then got into the passenger seat of the vehicle, and she drove away with Bodie and her three children, who were in the back seat. Bodie got out of the vehicle a short time later near a local gas station, and C.D. drove back to the scene of the shooting with the children.

¶11 The prosecution questioned C.D. about whether her 8- and 11-year-old daughters who were in the car at the time of the shooting were affected by the shooting. Bodie's counsel objected that the question called for speculation, and the circuit court overruled the objection. C.D. answered that her two daughters were close to both Bodie, who the daughters considered to be a father figure, and A.B., who they considered to be their uncle. According to C.D., her daughters were crying but were not afraid or affected by the shooting, except that they were "shook" by the gunshots. C.D. testified that she was in shock from the incident and was crying hysterically.

¶12 The prosecution also called as a witness Madison police officer Natalie Deibel, one of the officers dispatched to investigate the shooting. Deibel testified that, when she arrived at the apartment complex, she observed a parked car with three children in the back seat, but no driver or passenger. The prosecution asked her about the children's demeanor, and she responded that the children appeared to be "in shock and very traumatized." Bodie's counsel

eventually objected to this testimony as calling for an expert opinion about the children's states of mind, but then withdrew the objection.

¶13 After the prosecution rested its case, Bodie presented evidence in an attempt to establish that he shot A.B. in self-defense. Bodie called C.D. as a witness. On direct examination, C.D. testified that she heard A.B. tell Bodie, "I'll kill you," immediately before Bodie shot A.B. On cross-examination, C.D. admitted that she had not previously said that she heard A.B. tell Bodie, "I'll kill you," either to the police when interviewed or in her earlier testimony when called as a witness by the State. C.D. also reaffirmed on cross-examination her testimony that A.B. and Bodie talked for ten to fifteen minutes before the shooting occurred and that she was in the vehicle at the time of the shooting. The prosecution then played the visual recording of the incident, and C.D. admitted that the video did not match her testimony in several respects, including about the length of the encounter between Bodie and A.B.

¶14 Bodie testified to the following. During the confrontation with A.B., Bodie saw a bulge in A.B.'s waistline that Bodie believed was a weapon. Bodie and A.B. briefly exchanged words in a heated discussion about Bodie disrespecting A.B.'s mother, and then A.B. told Bodie: "Say that shit you said again to my mama. I kill you[.]" Bodie then shot A.B. several times. Bodie was afraid that A.B. was about to kill him and Bodie wanted to prevent A.B. from reaching for his weapon and returning fire.

¶15 In its rebuttal case, the prosecution called an officer who was the first to arrive at the scene after the shooting. He testified that he did not observe any weapons on A.B.'s body or anywhere in A.B.'s immediate vicinity. The

prosecution also called a detective who testified that the police did not find any weapons in A.B.'s vehicle or in the possession of the vehicle's passenger.

¶16 In its closing argument, the prosecution at one point referred to the effects of the shooting on the child witnesses and, at another point, mentioned Deibel's testimony that the children were crying and traumatized following the shooting. The prosecution argued that this testimony undermined C.D.'s testimony that the children were not afraid after the shooting or affected by the shooting. The prosecution in its rebuttal closing argument urged the jury to return a guilty verdict in order to send a message to the child witnesses, and to children in general, that human life matters, that the truth matters, and that the trauma which the child witnesses here experienced in response to the shooting matters. Bodie's counsel did not object to these remarks during the prosecution's rebuttal argument.

¶17 The jury found Bodie guilty of the lesser included offense of attempted second-degree intentional homicide. The circuit court ordered that the Department of Corrections prepare a Presentence Investigation Report ("PSI").

**Sentencing**

¶18 At the sentencing hearing, the circuit court considered Bodie's attempted homicide conviction discussed above, his additional convictions for bail jumping and possession of a firearm by a felon to which he had pled guilty before the trial, and two additional charges in a separate case for possession of methamphetamine and possession of a firearm by a felon to which Bodie pled guilty immediately before sentencing. The court also considered the PSI, which did not make sentencing recommendations. The parties jointly recommended that all other sentences run concurrently with the sentence for the attempted second-

7

degree intentional homicide conviction. The prosecution recommended that, on the attempted second-degree intentional homicide conviction, the court sentence Bodie to 45 years of imprisonment, consisting of 25 years of initial confinement and 20 years of extended supervision. Bodie recommended that the court impose eight years of initial confinement and eight to ten years of extended supervision. The court sentenced Bodie on the attempted second-degree intentional homicide conviction to 25 years of imprisonment, consisting of 16 years of initial confinement and nine years of extended supervision, with all other sentences running concurrently.

¶19    About one week later, the circuit court reconvened the parties on its own initiative to address an error in the PSI and in the prosecution's sentence recommendation. The court noted that, while the PSI did not make any sentencing recommendations, it stated that the maximum imprisonment sentence for Bodie's attempted second-degree intentional homicide conviction was 60 years, when, in fact, the maximum sentence was 30 years. The court explained that neither this error in the PSI nor the prosecution's sentencing recommendation of 45 years of imprisonment had influenced its sentencing decision because it had an understanding prior to the sentencing hearing that approximately 15 years of initial confinement was appropriate. The court also explained that it ultimately imposed a 16-year initial confinement period because "it became clear that Mr. Bodie had earned a year of [sentence] credit."

### Postconviction Proceedings

¶20    Bodie filed a postconviction motion requesting a new trial. Bodie argued that he is entitled to a new trial because the prosecution improperly introduced evidence about the effects of the shooting on the child witnesses and

improperly referenced these effects in its closing arguments, and that his trial counsel was ineffective in failing to object to these errors. Bodie also argued that these errors entitled him to new trial pursuant to the plain error doctrine and the circuit court's discretionary authority to grant a new trial in the interest of justice. In the alternative, Bodie argued that he is entitled to resentencing before a different circuit court because the court impermissibly prejudged his sentence.

¶21 After holding a *Machner* hearing, at which Bodie's trial counsel testified, the circuit court issued a thorough written decision denying Bodie's motion. The court did, however, grant Bodie's request to reduce his initial confinement sentence from 16 years to 15 years on the ground that the court considered Bodie's one year of sentence credit, and it also granted one additional day of sentence credit. The judgment of conviction was amended to reflect these changes.

¶22 Bodie appeals the amended judgment of conviction and the circuit court's postconviction decision and order.

## DISCUSSION

¶23 As stated, Bodie argues on appeal that he is entitled to a new trial on three grounds: (1) plain error; (2) ineffective assistance of counsel; and (3) in the interest of justice. In the alternative, Bodie argues that he is entitled to resentencing because the circuit court was objectively biased in determining his sentence.

### I. Bodie Is Not Entitled to a New Trial

### A. Plain Error

¶24 Bodie argues that there were three plain errors at trial: (1) C.D.'s testimony about the effects of the shooting on her two daughters who witnessed the shooting; (2) Deibel's testimony about the demeanor of C.D.'s daughters following the shooting; and (3) the prosecution's references to the effects of the shooting on the child witnesses and children in general in its closing arguments.

¶25 The plain error doctrine is recognized in WIS. STAT. § 901.03(4) and allows appellate courts to review errors that were otherwise forfeited by a party's failure to object or preserve the error for review as a matter of right.[3] *State v. Mayo*, 2007 WI 78, ¶¶28-29, 301 Wis. 2d 642, 734 N.W.2d 115. Wisconsin courts have not articulated a "bright-line rule" or "hard and fast classification" for the types of errors that constitute plain errors. *Id.*, ¶29 (citation omitted). Instead, "the existence of plain error will turn on the facts of the particular case." *State v. Jorgensen*, 2008 WI 60, ¶22, 310 Wis. 2d 138, 754 N.W.2d 77 (quoting *Mayo*, 301 Wis. 2d 642, ¶29). Of particular importance to this determination are the "quantum of evidence properly admitted and the seriousness of the error involved." *Id.* Another important consideration is whether the defendant has been denied a "basic constitutional right." *Id.*, ¶21 (citation omitted). Our supreme court has emphasized that the plain error doctrine should be applied "sparingly" and only when the error is "fundamental, obvious, and substantial." *Id.*, ¶¶21, 23.

---

[3] WISCONSIN STAT. § 901.03(4) provides in full: "Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the judge."

¶26    The defendant has the initial burden to show that the error is fundamental, obvious, and substantial. *Id.*, ¶23. If the defendant shows such an error, the burden then shifts to the State to show that the error is harmless. *Id.* "This court independently reviews the record to determine if a new trial is warranted due to plain error." *State v. Nelson*, 2021 WI App 2, ¶46, 395 Wis. 2d 585, 954 N.W.2d 11 (2020).

¶27    For the following reasons, we reject Bodie's plain error arguments.

### 1. C.D.'s Testimony

¶28    Bodie first argues that it was plain error for the prosecution to elicit testimony from C.D. about the effects of the shooting on her two daughters who were sitting in the back seat of the vehicle at the time of the shooting. Specifically, Bodie points to the portion of C.D.'s direct examination by the prosecution when C.D. was asked about the effect of the shooting on her two daughters. Bodie's trial counsel objected to this question as calling for speculation, which was overruled by the circuit court. C.D. responded that her daughters were not affected or afraid after the shooting. In response to further questioning, she acknowledged that after the shooting, her older daughter jumped out of the car and had to be told by C.D. to get back in the car, and that her daughters were crying and asking about A.B.

¶29    According to Bodie, this line of questioning about the effects of the shooting on C.D.'s two daughters was both irrelevant and unfairly prejudicial. *See* WIS. STAT. §§ 904.02. For the following reasons, we conclude that Bodie has not satisfied his burden of showing plain error because it was not error for the prosecution to elicit this testimony. *See id.*, ¶27 ("Before we consider whether 'plain error' occurred, we must first determine whether *any* error occurred.").

¶30    Evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." WIS. STAT. § 904.01. Relevant evidence is generally admissible. WIS. STAT. § 904.02. Here, C.D.'s testimony about the effects of the shooting on her two daughters was relevant for two primary reasons: supplying the hearsay foundation for the admission of her daughters' statements about the shooting and undermining C.D.'s credibility.

¶31    First, this testimony was relevant because it laid the foundation for admitting the hearsay statements of C.D.'s two daughters who witnessed the shooting. Because C.D. did not make the two daughters available to testify at the trial, the prosecution sought to elicit their out-of-court statements about what they observed of the shooting from two sources: C.D. and Deibel, who was the first officer on the scene to talk with the daughters. Because the daughters' out-of-court statements are ordinarily inadmissible as hearsay, *see* WIS. STAT. § 908.02, the prosecution needed to demonstrate that those statements fell within one of the hearsay exceptions enumerated in WIS. STAT. § 908.03. One such exception is the "excited utterance" exception, which applies to "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Sec. 908.03(2).

¶32    In order to introduce the daughters' hearsay statements under the excited utterance exception, the prosecution needed to demonstrate that the daughters' statements related to a "startling event or condition" (*i.e.*, the shooting) and that the daughters made their statements while "under the stress of excitement" caused by that event or condition. *See State v. Huntington*, 216 Wis. 2d 671, 681-82, 575 N.W.2d 268 (1998). For this reason, the prosecution asked C.D. questions such as: "[W]ere your daughters or your children impacted by

12

witnessing this incident?"; "Was there any crying in the vehicle?"; and "Were your daughters … afraid after this incident?" Because these questions sought to elicit testimony from C.D. regarding the children's "stress of excitement" caused by the shooting, these questions and C.D.'s responses were directly tied to establishing a foundation for the potential admission of her daughters' hearsay statements about the shooting. And because the daughters' statements about what they witnessed during the shooting are relevant to the elements of the charged offense, we conclude that C.D.'s testimony about the effects of the shooting on her two daughters was relevant and admissible.

¶33 The second reason this testimony is relevant is for a non-hearsay purpose in that C.D.'s testimony about the effects of the shooting on her daughters goes to C.D.'s credibility. "A witness's credibility is always 'consequential' within the meaning of WIS. STAT. § 904.01." *State v. Hurley*, 2015 WI 35, ¶81, 361 Wis. 2d 529, 861 N.W.2d 174 (citation omitted); *see also* *Rogers v. State*, 93 Wis. 2d 682, 688, 287 N.W.2d 774 (1980) ("Impeaching the testimony of a witness tends to make the factual assertions of the witness less probable than they would be without the impeaching testimony."). A witness's credibility can be challenged in multiple ways, including by showing that the witness is biased or by showing that the witness's testimony about material facts is contrary to other witnesses' testimony. *Rogers*, 93 Wis. 2d at 689-90. A witness's credibility can be challenged by any party, including the party calling the witness. WIS. STAT. § 906.07.

¶34 As indicated above, C.D. gave inconsistent answers to the prosecution's questions about the effects of the shooting on her two daughters. For instance, she denied that her daughters were affected by witnessing the shooting, yet she admitted that one of her daughters jumped out of the car after the

shooting, and that both daughters were crying and asking about A.B. Additionally, as discussed in the text below, Deibel testified that the children appeared to be "in shock and very traumatized," contrary to C.D.'s testimony that her two daughters were not affected or afraid after the shooting.

¶35 The State also used the contrast between C.D.'s and Deibel's testimony about the reactions of C.D.'s daughters to the shooting to call into question C.D.'s credibility and demonstrate that C.D. was biased in favor of Bodie. As referenced above, the State had an incentive to challenge C.D.'s credibility and raise issues about her potential bias because her testimony was important to Bodie's self-defense claim. To repeat, when called by the defense as a witness, she, for the first time, testified that A.B. had threatened to kill Bodie before Bodie shot A.B., bolstering Bodie's claim that he shot A.B. in self-defense. By calling into question C.D.'s testimony that her daughters were not affected by the shooting, the prosecution challenged C.D.'s credibility for the purpose of undermining the truthfulness of her testimony in other respects, including her testimony that A.B. threatened Bodie prior to the shooting. As a result, we conclude that C.D.'s testimony about the effects of the shooting on her daughters was relevant to undermining C.D.'s credibility about relevant circumstances of the shooting.

¶36 Bodie argues that C.D.'s testimony about the effects of the shooting on her two daughters was not relevant to laying a foundation for the excited utterance hearsay exception because the prosecution did not attempt to elicit any of the daughters' hearsay statements from C.D. during her testimony. We are not persuaded.

14

¶37    First, the prosecution may not have attempted to elicit further testimony about the statements of C.D.'s two daughters through C.D.'s testimony because C.D. equivocated regarding the emotional responses of her daughters as summarized above. The prosecution, therefore, may have operated under the reasonable premise that there was not a foundation for the excited utterance hearsay exception. Second, as explained above, Bodie does not dispute that C.D.'s testimony on this topic was relevant in assessing her credibility. For these reasons, we conclude that there was nothing improper about the prosecution's attempts to elicit testimony from C.D. about the effects of the shooting on her daughters.

¶38    Bodie also argues that, even if C.D.'s testimony about the effects of the shooting on her two daughters was relevant, it was unfairly prejudicial pursuant to WIS. STAT. § 904.03 and should have been excluded. According to Bodie, this testimony "raised an obvious risk that jurors' hearts would harden against Bodie because of the collateral damage his actions caused, not because those actions met the elements of the charged crime." Evidence is unfairly prejudicial under § 904.03 if it has "a tendency to influence the outcome by improper means or if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish or otherwise causes a jury to base its decision on something other than the established propositions in the case." *State v. Sullivan*, 216 Wis. 2d 768, 789-90, 576 N.W.2d 30 (1998). As the State observes, the jury had already heard that C.D.'s two daughters were in the vehicle at the time of the shooting and had seen Bodie shoot A.B. It likely would have come as no surprise for the jury to hear that the children were crying after seeing Bodie, a person they regarded as a father figure, shoot A.B., a person they regarded as an "uncle," from just a few feet away. In other words, this testimony

created little danger of emotionally influencing the jury to the extent that it resulted in a sense of horror or outrage beyond what the jury could already reasonably infer from the facts. For these reasons we conclude that the risk of unfair prejudice did not outweigh the probative value of C.D.'s testimony in establishing a potential hearsay exception regarding C.D.'s daughters' statements and challenging C.D.'s credibility.

### 2. Officer Deibel's Testimony

¶39 Bodie makes similar arguments in asserting that it was plain error for the prosecution to elicit testimony from Deibel about the demeanor of C.D.'s two daughters after the shooting. Specifically, Bodie contends that Deibel's testimony that the two daughters appeared "shocked and traumatized" was irrelevant and unfairly prejudicial. As noted above, Bodie's counsel objected to this testimony as calling for an expert opinion about the children's states of mind, but subsequently withdrew the objection. In response, the State argues that, like C.D.'s testimony, Deibel's testimony about the children's demeanor was relevant to laying the foundation for the excited utterance hearsay exception. For the following reasons, we conclude that Bodie has not satisfied his burden of showing that it was plain error for the prosecution to elicit this testimony.

¶40 We agree with the State that, like C.D.'s testimony, Deibel's testimony about the demeanor of the children was relevant to laying the foundation for the excited utterance hearsay exception. Specifically, Deibel's testimony that the children "seemed like they were in shock and very traumatized" tends to show that the children's statements to her, which included identifying the

16

victim and the shooter, were made while "under the stress of excitement" caused by the shooting. *See* WIS. STAT. § 908.03(2).[4] For these reasons, we conclude that eliciting Deibel's testimony was not plain error because the testimony was relevant and admissible.

¶41 Bodie does not dispute that Officer Deibel's testimony contained hearsay statements or that the prosecution needed to demonstrate that those statements fell under one of the hearsay exceptions. Instead, Bodie argues that Deibel's testimony about the children's demeanor was inadmissible because the children's statements could have been admitted under the "present sense impression" hearsay exception without the need for the "unfairly prejudicial" testimony that the children were shocked and traumatized.[5] This argument fails because Deibel's testimony that the children were shocked and traumatized did not present a danger of unfair prejudice that outweighed the probative value of that testimony. As with C.D.'s testimony about the effects of the shooting on the

---

[4] We note that one factor in determining whether the excited utterance exception applies is the "[t]he time between the triggering event and the utterance." *State v. Moats*, 156 Wis. 2d 74, 97, 457 N.W.2d 299 (1990). For the purposes of this exception, "time is measured by the duration of the condition of excitement rather than mere time elapse from the event or condition described." *Id.* (citation omitted); *Bertrang v. State*, 50 Wis. 2d 702, 707, 184 N.W.2d 867 (1971) ("[T]he fact that the assertions are not made within a few minutes or even hours of the [event] is not controlling."). Courts afford a "liberal interpretation" of this exception when applied to young children because "the general psychological characteristics of children typically extend the period of time that is free from the dangers of conscious fabrication." *State v. Gerald L.C.*, 194 Wis. 2d 548, 556-57, 535 N.W.2d 777 (Ct. App. 1995). Although Bodie does not dispute the applicability of this exception on temporal grounds, our review of the record reveals that the children's statements to Deibel occurred within ten minutes after the shooting occurred. For these reasons, we conclude that these statements were sufficiently contemporaneous to the shooting for the purposes of applying the excited utterance hearsay exception.

[5] The present sense impression exception excludes from the hearsay rule statements "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." WIS. STAT. § 908.03(1).

children (as discussed above), the jury likely would not be surprised to hear Deibel's testimony that the children were "in shock" and "traumatized" after recently witnessing a shooting involving two individuals with whom they had close relationships. The prosecution also did not belabor this point—it asked one question about the children's demeanor before asking Deibel what they said to her. As a result, there is a low risk that this testimony would have led the jury to reach a decision on an improper emotional basis. *See Sullivan*, 216 Wis. 2d at 789-90. This balance of probative value and unfair prejudice is not altered simply because there is another hearsay exception that, in Bodie's view, would have allowed for the children's hearsay statements to be admitted without evidence of the children's reactions to the shooting.

¶42     Bodie also argues that Deibel's testimony about the children's demeanor was not relevant as foundation for the excited utterance exception because the testimony did not demonstrate that the children's statements were made while under the stress of excitement caused by the shooting. According to Bodie, Deibel's testimony that the children "seemed like they were in shock and very traumatized" was a bare conclusion about the children's condition, not Deibel's perceptions of the children's indications of stress. We are not persuaded. Deibel's testimony that the children appeared to be "in shock" and "traumatized" was sufficient to satisfy the excited utterance hearsay exception. This is consistent with the descriptions of stress in other Wisconsin cases that have been determined to satisfy the excited utterance exception. *See, e.g.*, *Huntington*, 216 Wis. 2d at 685 (excited utterance exception applied where the child declarant was the victim of sexual assault and was described as "'crying,' 'hysterical,' 'guilt-ridden,' and 'scared'"); *State v. Padilla*, 110 Wis. 2d 414, 421, 329 N.W.2d 263 (Ct. App.

18

1982) (excited utterance exception applied where the child declarant was the victim of sexual assault and was described as "afraid [and] scared").

¶43     For these reasons, we conclude that Bodie fails to establish that the prosecution's eliciting of Deibel's testimony was plain error.

### 3. The Rebuttal Closing Argument

¶44     Bodie argues that the prosecution's remarks in its rebuttal closing argument were plain error. In relevant part, the prosecution stated in its rebuttal:

> We started out talking about the children and we're going to end on these children.… [W]hat impact did this leave on those children?...
>
> The first thing … is that these children will see from [Bodie's] actions that human life doesn't matter.… [T]here are children playing outside of this apartment complex. There are children in the car. There are children in the house. And the video shows us very clearly that [Bodie] gets out of his car with the gun behind his back.… [H]e shoots [A.B.] five times …. He drives off.… He doesn't even check on his family until the next day, so the children are left with the impression that human life doesn't matter.
>
> I think the second thing that … the children are left with … is that not only does human life not matter but the truth does not matter.
>
> We saw witnesses for the defendant come in here and tell you all kinds of things. None of them lined up with the video.… So what we're left with and what the children are left with is that the truth doesn't matter. The children are also left with that the law doesn't matter.… [W]e have the opportunity this afternoon to give these children … another narrative … that things do matter, that people matter, that the victim in this instance is a human and he matters, and so there will be two verdict forms that you'll see. One verdict form will continue this narrative of Mr. Bodie telling kids that they don't matter, … but there's one verdict form and that's the guilty form. It gives kids the right impression … that the truth does matter, that good does win over bad.

19

> We know that the evidence shows us that children experience and carry trauma for years and decades after. And we have that opportunity today to show them and tell them that their narrative … matters and leave a different and better impression on them. And I'm going to ask you to hold Mr. Bodie accountable, give these children another narrative and find Mr. Bodie guilty….

Bodie argues that these remarks "infected Bodie's trial with unfairness" because they built on other references regarding the effects of the shooting on the child witnesses and were likely to cause the jury to convict Bodie by considering factors other than the evidence.[6]

¶45 "Generally, counsel is allowed latitude in closing argument[.]" *State v. Neuser*, 191 Wis. 2d 131, 136, 528 N.W.2d 49 (Ct. App. 1995). However, a prosecutor's closing arguments are improper "where the prosecutor goes beyond reasoning from the evidence and suggests that the jury should arrive at a verdict by considering factors other than the evidence." *Id.*; *State v. Burns*, 2011 WI 22, ¶48, 332 Wis. 2d 730, 798 N.W.2d 166 ("It is impermissible … for a prosecutor to suggest the jury reach its verdict by considering facts not in the evidence."). Such remarks by a prosecutor violate a defendant's due process right to a fair trial if those remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Neuser*, 191 Wis. 2d at 136 (quoting *State v. Wolff*, 171 Wis. 2d 161, 167, 491 N.W.2d 498 (Ct. App. 1992)).

---

[6] Bodie also argues that it was plain error for the prosecution in closing arguments to reference the "inadmissible testimony" elicited from C.D. and Deibel. However, we have concluded that this testimony was admissible for the reasons explained above. Therefore, it was not plain error for the prosecution to mention this evidence in its closing arguments based on inadmissibility. *See State v. Burns*, 2011 WI 22, ¶48, 332 Wis. 2d 730, 798 N.W.2d 166 ("A prosecutor may comment on the evidence, detail the evidence, argue from it to a conclusion and state that the evidence convinces him and should convince the jurors." (citation omitted)).

¶46 Once the defendant establishes that the prosecutor's improper remarks are "fundamental, obvious, and substantial," the burden shifts to the State to demonstrate that the errors are harmless. *Jorgensen*, 310 Wis. 2d 138, ¶23.

¶47 The State agrees with Bodie that the prosecution's remarks in its rebuttal closing argument, as set forth above, constituted a "fundamental, obvious, and substantial" error. However the State argues that the error was harmless. Based on this concession by the State, we assume without deciding that the prosecution's rebuttal closing argument constituted a "fundamental, obvious, and substantial" error. But we agree with the State that the assumed error was harmless.

¶48 To determine whether an error is harmless, the State must prove "beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Id.* (citation omitted). Wisconsin courts have identified several factors to assist in determining whether an error is harmless:

> (1) the frequency of the error; (2) the importance of the erroneously admitted evidence; (3) the presence or absence of evidence corroborating or contradicting the erroneously admitted evidence; (4) whether the erroneously admitted evidence duplicates untainted evidence; (5) the nature of the defense; (6) the nature of the State's case; and (7) the overall strength of the State's case.

*Id.* (citing *Mayo*, 301 Wis. 2d 642, ¶48). Whether a prosecutor's improper remarks were harmless error must be considered in the context of the entire trial. *Mayo*, 301 Wis. 2d 642, ¶43.

¶49 Here, the prosecution had a very strong case against Bodie. The entire encounter between Bodie and A.B. was captured on surveillance video, which showed that A.B. was standing with his arms at his sides when Bodie fired

21

his gun and that Bodie fired additional shots at A.B. as he was falling to the ground. Further, the prosecution elicited testimony from multiple eyewitnesses to the shooting, including A.B., C.D., C.D.'s daughters, and Bodie's nephew. This evidence strongly supported the findings that Bodie in fact fired a gun at A.B. multiple times at close range and that the force he used against A.B.—even if he believed it was necessary for self-defense—was unreasonable.

¶50 By contrast, Bodie's defense was weak. Bodie admitted that he fired a gun at A.B., but he claimed that he did so in self-defense. This defense depended heavily on the jury's assessment of Bodie's credibility, especially with respect to his testimony that A.B. was carrying a weapon and threatened to kill Bodie. Bodie's self-defense claim also relied on C.D.'s testimony that she heard A.B. threaten to kill him. However, the surveillance video of the interaction did not show A.B. displaying or carrying a weapon, and the police testified that no weapon was found in A.B.'s possession or in the vehicle that he drove prior to the shooting. Also, the prosecution undermined C.D.'s credibility through her admission during cross examination that she had never told law enforcement or mentioned in her prior testimony when called by the prosecution that A.B. threatened to kill Bodie until her trial testimony during direct examination by the defense. The prosecution also showed that fundamental facets of C.D.'s version of events—including the length of the interaction between Bodie and A.B., whether she was in the vehicle at the time of the shooting, and the effects of the shooting on her daughters—were contradicted by the surveillance video, the audiovisual recording from Deibel's squad car, and the testimony of other witnesses.

¶51 Turning to the frequency factor, the error was not frequent. Although the prosecution's rebuttal argument contained multiple requests for the

jury to return a guilty verdict to send a message that the child witnesses and children in general matter, these remarks were relatively infrequent when considered in the context of the entire trial. *See id.* (a prosecutor's improper remarks must be considered in the context of the entire trial). As the State points out, these remarks took up only a brief time at the conclusion of a three-day trial.

¶52 Bodie argues that the prosecution's rebuttal argument built on similar remarks and questions about childhood trauma in the prosecution's voir dire, its opening statement, its examination of C.D. and Deibel, and its initial closing argument.[7] We are not persuaded. Our review of the record reveals that these references to "childhood trauma" and the effects of the shooting on the child witnesses were isolated and not part of a consistent theme by the prosecution. Even though the prosecution's initial closing argument contained some references to this topic, those references were brief and largely overshadowed by the prosecution's discussion of other evidence produced during the three-day trial.

¶53 Regarding the final element of the test, the challenged rebuttal argument was not especially important in that it did not directly pertain to any elements of the charged crime. *See **Jorgensen***, 310 Wis. 2d 138, ¶47 (prosecutor's improper remarks are important if they "directly pertained to elements of the crimes charged"). To convict Bodie of attempted first-degree intentional homicide, the jury needed to find that Bodie: (1) intended to kill A.B.; and (2) performed acts towards committing that crime that unequivocally indicate

---

[7] Bodie never develops a legal argument that it was plain error in itself for the prosecution to make these references during voir dire, during its opening statement, or during its initial closing argument. We therefore do not address whether these portions of the trial were plain error. *See **State v. Pettit***, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) (this court may decline to address undeveloped arguments).

that he formed that intent and would have caused the death of A.B. but for the intervention of another person or extraneous factor. WIS JI—CRIMINAL 1072. To convict Bodie of attempted second-degree intentional homicide, the jury needed to find that the elements of attempted first-degree intentional homicide were proved and that: (1) Bodie used force to prevent or terminate what he reasonably believed to be an unlawful interference with his person; (2) he actually believed that the force he used was necessary to prevent imminent death or great bodily harm to himself; and (3) that belief or the amount of force used was unreasonable. *Id.*

¶54 The prosecution's rebuttal argument that Bodie's actions caused the child witnesses to suffer trauma and that the jury should send a message that children, life, and truth matter, do not directly pertain to any of the elements of the charged offense. Even if Bodie is correct that these remarks would have had the effect on the jury of "buil[ding] on" other references to childhood trauma during voir dire, the prosecution's opening statement, and the prosecution's initial closing remarks, the effect of these references was diminished by the circuit court's instruction to the jury to "be very careful and deliberate in weighing the evidence" and to not be "swayed by sympathy, prejudice or passion." We presume that jurors follow the instructions given by the court. *State v. Dorsey*, 2018 WI 10, ¶55, 379 Wis. 2d 386, 906 N.W.2d 158.

¶55 Given the factors discussed above and the evidence presented at trial, we conclude that the State has demonstrated beyond a reasonable doubt that the jury would have found Bodie guilty of attempted second-degree intentional homicide even absent the prosecution's relatively brief remarks in its rebuttal argument about "childhood trauma." *See Jorgensen*, 310 Wis. 2d 138, ¶23. Accordingly, we conclude that the prosecution's assumed improper remarks in its rebuttal argument were harmless error.

## B. Ineffective Assistance of Counsel

¶56 Bodie argues that he is entitled to a new trial because his trial counsel was ineffective. For a claim of ineffective assistance of counsel to be successful, a defendant must "demonstrate both that (1) counsel's representation was deficient; and (2) this deficiency was prejudicial." *State v. Maloney*, 2005 WI 74, ¶14, 281 Wis. 2d 595, 698 N.W.2d 583 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). We need not address both prongs of this inquiry if the defendant makes an insufficient showing on one. *Id.*

¶57 Whether trial counsel performed deficiently is an issue of law that we review de novo. *State v. Breitzman*, 2017 WI 100, ¶38, 378 Wis. 2d 431, 904 N.W.2d 93. "To demonstrate deficient performance, a defendant must show that counsel's representation fell below an objective standard of reasonableness considering all the circumstances." *State v. Ruffin*, 2022 WI 34, ¶30, 401 Wis. 2d 619, 974 N.W.2d 432. "In general, there is a strong presumption that trial counsel's conduct 'falls within the wide range of reasonable professional assistance.'" *Breitzman*, 378 Wis. 2d 431, ¶38 (citation omitted).

¶58 Whether counsel's allegedly deficient performance was prejudicial is also an issue of law that we review de novo. *Id.*, ¶39. To establish prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.

25

¶59 Bodie contends that his trial counsel performed ineffectively by failing to properly object to the testimony elicited from C.D. and Deibel regarding C.D.'s two daughters' responses to the shooting. Bodie argues that, instead of trial counsel objecting on the grounds of speculation and calling for expert opinion, his counsel should have objected to this testimony as irrelevant and unfairly prejudicial. We reject this argument for the same reasons we reject Bodie's plain error argument: The testimony about C.D.'s two daughters' reactions after the shooting was admissible as foundation for the children's hearsay statements and as evidence tending to undermine C.D.'s credibility. And, the danger of unfair prejudice did not outweigh the probative value of this testimony. For these reasons, any objection to this testimony as irrelevant or unfairly prejudicial would have been meritless. We conclude that counsel did not perform deficiently by failing to make meritless objections. *See State v. Counihan*, 2020 WI 12, ¶51 n.15, 390 Wis. 2d 172, 938 N.W.2d 530.[8]

¶60 Bodie also argues that his trial counsel was ineffective by failing to object on due process grounds to the prosecution's remarks in its rebuttal argument, as detailed above.[9] The State does not dispute that the remarks in the rebuttal argument were improper or that Bodie's counsel performed deficiently by

_____

[8] We also conclude that it was not deficient performance for Bodie's counsel to fail to object to the prosecution's references in its closing arguments to the testimony elicited from C.D. and Deibel regarding C.D.'s two daughters' reactions to the shooting. For the same reasons as discussed in the text, this testimony was properly admitted, and any objection to the prosecution's remarks would have been meritless. *See State v. Counihan*, 2020 WI 12, ¶51 n.15, 390 Wis. 2d 172, 938 N.W.2d 530.

[9] Bodie does not develop an argument on appeal that trial counsel's failure to object to the prosecution's initial closing argument was ineffective. We therefore decline to address this as an argument and we limit our ineffective assistance of counsel discussion to the claim that trial counsel was ineffective in failing to object to the prosecution's remarks in its rebuttal argument. *See Pettit*, 171 Wis. 2d at 647 (this court may decline to address undeveloped arguments).

failing to object to them. Nonetheless, the State contends that this deficient performance was not prejudicial. We agree.

¶61 As explained above in our plain error analysis, we conclude that the prosecution's remarks in its closing rebuttal argument, which we assume to constitute plain error, were harmless error because the State proved beyond a reasonable doubt that a rational jury would have found Bodie guilty of attempted second-degree intentional homicide absent this error. For the same reasons, we conclude that Bodie cannot show a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different. In other words, Bodie has not demonstrated that his counsel's failure to object to the prosecution's remarks in its rebuttal argument was "so serious as to deprive [Bodie] of a fair trial, a trial whose result is reliable." *See Strickland*, 466 U.S. at 687; *see also State v. Sanchez*, 201 Wis. 2d 219, 230-31, 548 N.W.2d 69 (1996) (holding that the harmless error inquiry and the prejudice inquiry under *Strickland* are "substantively the same," except for the party carrying the burden of proof (citation omitted)). For these reasons, we conclude that Bodie has not demonstrated that trial counsel's failure to object to the prosecution's assumed improper remarks in its rebuttal argument constituted ineffective assistance.

## C. New Trial in the Interest of Justice

¶62 Bodie argues that he is entitled to a new trial in the interest of justice pursuant to WIS. STAT. § 752.35. Under this statute, we have the discretion to reverse and remand for a new trial "if it appears from the record that the real controversy has not been fully tried," even if the party failed to properly raise the

issue in a motion or objection. Sec. 752.35.[10] Unlike a new trial based on plain error or ineffective assistance of counsel, a new trial based on the real controversy not being tried does not require a determination that a new trial would be reasonably likely to result in a different outcome. *State v. Williams*, 2006 WI App 212, ¶36, 296 Wis. 2d 834, 723 N.W.2d 719. Nevertheless, our discretionary reversal power "should be exercised sparingly and with great caution." *Id.* We determine if a new trial is warranted in the interest of justice by conducting an independent review of the record. *Id.*, ¶12.

¶63     One situation in which a controversy may not have been fully tried is if "the jury had before it evidence not properly admitted which so clouded a crucial issue that it may be fairly said that the real controversy was not fully tried." *State v. Hicks*, 202 Wis. 2d 150, 160, 549 N.W.2d 435 (1996). In this type of situation, courts have examined the importance of the erroneously admitted evidence to the prosecution's case and whether that evidence hindered the jury's ability to consider the properly admitted evidence. *Lorenz v. Wolff*, 45 Wis. 2d 407, 426, 173 N.W.2d 129 (1970).

¶64     Here, Bodie argues that the real controversy was not tried because the prosecution improperly elicited testimony from C.D. and Deibel about the reactions of C.D.'s two daughters to the shooting. As explained above, we reject

---

[10] This statute also authorizes a new trial if "it is probable that justice has for any reason miscarried." WIS. STAT. § 752.35; *Vollmer v. Luety*, 156 Wis. 2d 1, 16, 456 N.W.2d 797 (1990) ("[A] new trial may be ordered on either of two grounds:  (1) whenever the real controversy has not been fully tried or (2) whenever it is probable that justice has for any reason miscarried."). Here, Bodie argues that he is entitled to a new trial on the ground that the real controversy was not fully tried. We therefore do not address whether it is probable that justice was miscarried.

that argument. For the same reasons, we conclude that this evidence did not cloud the jury's consideration of any crucial issue.

¶65 Bodie also argues that the real controversy was not fully tried because the prosecution's assumed improper remarks in its closing rebuttal argument frequently referenced the effects of the shooting on the child witnesses and on children in general.[11] The State responds that, even if those remarks were improper, they did not cloud the jury's consideration of the elements of the charged crime. We agree.

¶66 As set forth above, the challenged prosecution's remarks in its rebuttal argument were not a central feature of the prosecution's case. The prosecution's presentation of evidence did not mention the effects of the shooting on the children except as it was relevant to laying the foundation for hearsay statements and to undermine C.D.'s credibility. Also, as noted above, the circuit court instructed the jury not to be swayed by sympathy or emotion, and we presume that the jury heeded these instructions. *See Dorsey*, 379 Wis. 2d 386, ¶55.

¶67 For these reasons, we conclude that Bodie is not entitled to a new trial in the interest of justice under WIS. STAT. § 752.35.

---

[11] Like in his other claims that we reject, Bodie does not develop a legal argument that the prosecution's initial closing argument resulted in the real controversy not being tried. Therefore, we reject this as an argument and consider it no further.

## II. Bodie Is Not Entitled to Resentencing

¶68 In the alternative, Bodie argues that he is entitled to resentencing because the circuit court was allegedly objectively biased at sentencing. "The right to an impartial judge is fundamental to our notion of due process." *State v. Goodson*, 2009 WI App 107, ¶8, 320 Wis. 2d 166, 771 N.W.2d 385. Objective bias occurs where there is "a serious risk of actual bias … based on objective and reasonable perceptions." *Miller v. Carroll*, 2020 WI 56, ¶24, 392 Wis. 2d 49, 944 N.W.2d 542 (quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 884 (2009)). A court may be objectively biased if "a reasonable person could question the court's impartiality based on the court's statements." *Goodson*, 320 Wis. 2d 166, ¶9. Whether a court was objectively biased is an issue of law that we review independently. *State v. Herrmann*, 2015 WI 84, ¶23, 364 Wis. 2d 336, 867 N.W.2d 772.[12] We presume that courts act fairly and impartially, and the burden is on the defendant to rebut this presumption by a preponderance of the evidence. *Id.*, ¶24.

¶69 As noted above, on the attempted second-degree intentional homicide conviction, the circuit court imposed a 25-year imprisonment sentence, consisting of 16 years of initial confinement and nine years of extended supervision. Several days later, on its own initiative, the court reconvened the parties to address errors in the PSI regarding the maximum sentence for attempted second-degree intentional homicide and in the State's sentencing recommendation, which exceeded the maximum sentence. The court said that it noticed this error

---

[12] A judge may also be subjectively biased. *See State v. Gudgeon*, 2006 WI App 143, ¶20, 295 Wis. 2d 189, 720 N.W.2d 114. Here, Bodie does not argue that the circuit court exhibited subjective bias, so we limit our analysis to objective bias.

prior to the sentencing hearing, but failed to raise the error at sentencing. The court explained that this error did not influence its decision because it had considered a possible sentencing framework prior to the sentencing hearing:

> I will acknowledge that I came into the hearing after having reviewed all of the sentencing materials, but not yet hearing arguments or statements obviously, I came in believing that roughly 15 years was the sentence that I believed was appropriate for the conduct regardless of the maximum that was available ….
>
> … That was not splitting the difference between the 25 years recommended by the State and the lower amount recommended by the defense. It was the amount that the Court believed appropriate under all of the facts and circumstances and was not influenced by the incorrect information as to the maximum from the Pre-Sentence Report or the recommendation by the State that was actually in excess of what was available for the sentencing.
>
> … I wanted to make sure that the record reflected that I was aware that the penalty was not the amount that was indicated and that my only failure, if it were, at sentencing was not to raise that with everybody at the time because I knew the amount that, unless I was convinced otherwise by argument of counsel or statements made, I knew the amount that I believed I was going to impose.

¶70 Bodie argues that these comments show that the circuit court was objectively biased and impermissibly prejudged his sentence. We disagree.

¶71 Prior to the sentencing hearing, the court had presided over the three-day trial, heard the evidence, and reviewed all of the submitted sentencing materials. In the postsentencing hearing that the court convened, it explained that it had come into the sentencing hearing with a "rough" sentencing framework of an initial confinement term of 15 years. The court also emphasized that this was not its final decision about Bodie's sentence, explaining that it had "not yet hear[d] arguments or statements obviously" and was open to being "convinced otherwise by argument of counsel or statements made[.]" When the court's comments are

31

read in this context, a reasonable person would understand that the court was explaining that it had a "rough" idea of a sentencing framework before the sentencing hearing, something a reasonable person would expect from a judge who had presided over a three-day trial and had reviewed the PSI and other sentencing materials prior to the sentencing hearing. The court's statements did not constitute an admission that it had been firmly locked into a particular sentence as Bodie represents. Instead, the court's statements provided context for its explanation why the court was not influenced by the incorrect maximum imprisonment term that was reflected in both the PSI and in the prosecution's sentencing recommendation.

¶72    Bodie argues that a circuit court's comments about a defendant's sentence may demonstrate objective bias even if the court's comments are not "definitive and final." For instance, Bodie points to our decision in *Gudgeon*, in which Gudgeon's probation agent sent a letter to the court asking that Gudgeon's remaining probation obligations be converted into a civil judgment, and the court responded in a handwritten note at the bottom of the letter: "No—I want his probation extended." *State v. Gudgeon*, 2006 WI App 143, ¶3, 295 Wis. 2d 189, 720 N.W.2d 114. We determined that the court was not impartial in sentencing because a reasonable person would interpret this note as evidencing the court's personal desire to extend Gudgeon's probation. *Id.*, ¶26. We explained that a reasonable person "would discern a great risk that the trial court … had already made up its mind to extend probation long before the extension hearing took place." *Id.*

¶73    Bodie also cites for persuasive value our unpublished opinion in *Lamb*, in which the circuit court made comments prior to sentencing that it was unlikely to follow the parties' joint recommendation of probation. *State v. Lamb*,

No. 2017AP1430-CR, unpublished slip op. ¶5 (WI App Sept. 25, 2018). Specifically, after Lamb said that he thought it was possible for him to go home that day, the court responded: "Not really…. I mean, there's a possibility, but it's probably not going to happen." *Id.* We determined that the court's comments revealed a serious risk of actual bias because a reasonable person would interpret those comments as prejudging Lamb's sentence. *Id.*, ¶14. We rejected the State's argument that the court was only speaking of "probabilities and possibilities," explaining that the court's comments indicated that it "was advising Lamb the possibility that [it] would order probation was either nonexistent or very minimal." *Id.*, ¶17.

¶74 Bodie contends that, like the circuit courts in *Gudgeon* and *Lamb*, the circuit court's comments here reveal a serious risk of actual bias because they show that the circuit court had already formed an intent to impose a 15-year initial confinement period. We disagree. Unlike the courts in *Gudgeon* and *Lamb*, the court here explained that it was properly mindful of the fact it had "not yet hear[d] arguments or statements obviously" and was open to being "convinced otherwise by argument of counsel or statements made[.]" These comments show that, while the court had developed a framework for a possible sentence, as we would expect a circuit court to do prior to a sentencing hearing, it had not made up its mind on the sentence that it would impose and that it intended to consider the arguments and statements presented at the sentencing hearing. For these reasons, we conclude that a reasonable person would not discern a great risk that the court prejudged Bodie's sentence.

## CONCLUSION

¶75 For the foregoing reasons, the judgment and order of the circuit court are affirmed.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.